KEFGEN v DAVIDSON

Docket No. 209770. Submitted January 12, 2000, at Detroit. Decided July 7, 2000, at 9:00 A.M.

Bruce C. Kefgen brought an action in the Genesee Circuit Court against Terry Davidson and Darlene Jennings, alleging defamation as a result of communications published by the defendants, residents of Genesee County and parents of students enrolled within the Bently School District in Genesee County, both inside and outside school board meetings during the plaintiff's service as superintendent of the school district. The court, Geoffrey L. Neithercut, J., granted summary disposition in favor of the defendants, finding that some of the communications made during the school board's legislative session were absolutely privileged and that the plaintiff failed to show that the alleged communications were made with actual malice. The plaintiff appealed.

The Court of Appeals held:

1. A duly convened meeting of a school board may constitute a proceeding of a quasi-legislative body that allows for application of the absolute privilege doctrine. However, the particular circumstances under which the alleged communications were made in this case do not support application of the absolute privilege. None of the communications were made in resolution of a matter of public concern. Private citizens are not absolutely privileged to engage in unfettered speech simply because the statements are made during a legislative or quasi-legislative proceeding or loosely involve a public matter already resolved.

2. A public figure, such as the plaintiff, who claims defamation must prove by clear and convincing evidence, rather than by a preponderance of the evidence, that the publication was a defamatory falsehood and that it was made with actual malice through knowledge of its falsity or through reckless disregard for the truth. The plaintiff failed to establish a defamation claim by clear and convincing evidence that the defendants made any of the alleged communications with actual malice. The evidence, at most, creates an inference of malice. A mere inference is insufficient to prove defamation of a public figure.

3. The alleged defamatory statements are subject to a qualified privilege, not an absolute privilege. The plaintiff failed to present clear and convincing evidence to overcome the privilege. Although the court erred in granting summary disposition on the basis of absolute privilege, it reached the right result and its grant of summary disposition must be affirmed.

Affirmed.

1. LIBEL AND SLANDER — PRIVILEGED COMMUNICATIONS.

A communication deemed absolutely privileged is not actionable, even when spoken with malice; the doctrine of absolute privilege applies only to communications regarding ongoing matters of public concern and is generally applied to communications made during legislative and judicial proceedings, by military and naval officers, and by a public official in furtherance of an official duty during proceedings of subordinate legislative and quasi-legislative bodies; speech during legislative or quasi-legislative proceedings is not absolutely privileged merely because the communications are made at a public meeting or loosely involve a public matter already resolved.

2. LIBEL AND SLANDER — PUBLIC FIGURES — QUALIFIED PRIVILEGE — MALICE.

A public figure claiming defamation must prove by clear and convincing evidence, rather than by a preponderance of the evidence, that the publication was a defamatory falsehood and that it was made with actual malice through knowledge of its falsity or through reckless disregard for the truth; general allegations that privileged statements were false and malicious are insufficient to create a genuine issue of fact regarding whether a person published a statement with actual malice; in determining whether a defendant acted with actual malice, the question is whether the defendant entertained serious doubts regarding the truth of the statements published, not whether a prudent person would have published or investigated before publishing; a mere inference of malice is insufficient to prove by clear and convincing evidence that the alleged defamatory statements were made with actual malice (MCL 600.2911[6]; MSA 27A.2911[6]).

*Plunkett & Cooney, P.C.* (by *Jeffrey C. Gerish*), for the plaintiff.

*Garan, Lucow, Miller, P.C.* (by *Rosalind Rochkind* and *William J Brickley*), for Terry Davidson.

*Denise L. Mitcham & Associates* (by *Pamela Hobbs*), for Darlene Jennings.

Before: ZAHRA, P.J., and SAAD and GAGE, JJ.

ZAHRA, P.J. Plaintiff appeals as of right from the trial court's order granting defendants' motions for summary disposition pursuant to MCR 2.116(C)(8) and dismissing plaintiff's defamation claims. We affirm.

FACTS

This case is based on alleged defamatory communications defendants made in 1995, during plaintiff's service as superintendent of the Bentley School District in Genesee County. Defendants are residents of Genesee County and parents of students enrolled in schools within the Bentley School District.

After the sale of a building that housed the Bentley School District's administrative offices, the Bentley School Board considered the options of renting, using already-owned facilities, or constructing a new building to serve as the new offices. On June 12, 1995, the school board voted to construct a new administrative office building, the cost not to exceed $200,000. During the ensuing months, defendants and other parents openly opposed the school board's decision. Both defendants became involved in a campaign to recall two board members and were outspoken regarding plaintiff's perceived role in the board's decision-making process.[1]

---

[1] It is undisputed that plaintiff, as superintendent, did not have an official vote on the construction decision or any other policy decision of the school board. However, defendants believed plaintiff exerted influence over the school board and took part in private meetings with the board regarding the construction decision.

Soon after the school board's decision, defendant Darlene Jennings traveled to St. Clair County to review public documents pertaining to plaintiff's tenure as superintendent of the Algonac School District from 1989 to March 1992. Defendant Jennings admits her purpose in reviewing the documents was to determine the reason plaintiff left his position in Algonac. Defendant Jennings gave copies of the several documents she obtained to defendant Terry Davidson to review. In early September 1995, defendant Davidson filed a complaint with the Burton Police Department, claiming plaintiff violated competitive bidding laws and the Open Meetings Act, MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, by meeting privately with school board members regarding the construction decision and by issuing a $30,000 check to a contractor before the school board's official vote to construct the new administrative offices. Defendant Davidson suspected plaintiff and school board members received kickbacks from contractors and subcontractors.[2]

According to plaintiff, during the months following the school board's vote to construct the new administrative building, defendants published several false, disparaging communications inside and outside school board meetings in an effort to cause his employment to be terminated. First, plaintiff claims defendants distributed a letter from the Algonac School Board dated April 1, 1992, and attached several additional typewritten pages that referenced allegations lodged by the Algonac School District against

---

[2] The complaint was referred to the Michigan Department of State Police, which investigated the claim. After considerable investigation, neither plaintiff nor any school board member was prosecuted in connection with the complaint.

plaintiff. Plaintiff claims the allegations referenced on the additional pages are false. Second, plaintiff claims defendant Jennings told a reporter at a school board meeting on July 17, 1995, that plaintiff's employment was terminated by Algonac Community Schools for misappropriation of funds. Third, plaintiff claims that while the Bentley School Board was in executive session on October 10, 1995, defendant Davidson told individuals attending the meeting that plaintiff had lied to the Bentley School Board. Fourth, plaintiff claims defendant Davidson told several people plaintiff was not to be trusted, was incompetent, was guilty of mismanagement, violated the law, and was fired from his job in Algonac. Fifth, plaintiff claims defendant Davidson told at least one person that the day before plaintiff was evicted plaintiff had crawled out the second-story window of a dwelling he rented in Algonac and left the gas on.

On December 4, 1995, plaintiff filed the present defamation action based on those alleged communications. Defendants filed motions for summary disposition on the grounds that the statements were absolutely privileged or, at least, subject to a qualified privilege given plaintiff's status as a public figure. The trial court ultimately granted summary disposition for defendants, ruling that some of the alleged communications were made during the Bentley School Board's legislative session and were absolutely privileged. The trial court also concluded that plaintiff failed to show by clear and convincing evidence that the alleged communications were made with actual malice. On appeal, plaintiff contends the trial court erred in determining that any of the defamatory communications were absolutely privileged and erred in ruling

that there is no factual issue regarding whether defendants published the communications with knowledge of their falsity or in reckless disregard of the truth.

STANDARD OF REVIEW

We review a trial court's grant or denial of a motion for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Although defendants brought their motions for summary disposition pursuant to MCR 2.116(C)(8), the parties and the trial court relied on documentary evidence beyond the pleadings. Therefore, we will treat the motions as having been granted pursuant to MCR 2.116(C)(10) and examine the pleadings and the documents. *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 183-184 (BOYLE, J.); 551 NW2d 132 (1996); *Glittenberg v Doughboy Recreational Industries, Inc*, 436 Mich 673, 681 (GRIFFIN, J.); 462 NW2d 348 (1990). A motion under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Spiek, supra*; *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). A court must consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in a light most favorable to the nonmoving party in deciding whether a genuine issue of material fact exists. *Ritchie-Gamester v Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999); *Rollert v Dep't of Civil Service*, 228 Mich App 534, 536; 579 NW2d 118 (1998). All reasonable inferences are resolved in the nonmoving party's favor.

*Hampton v Waste Mgt of Michigan, Inc*, 236 Mich App 598, 602; 601 NW2d 172 (1999).[3]

ANALYSIS

A communication is defamatory if, under all the circumstances, it tends to so harm the reputation of an individual that it lowers the individual's reputation in the community or deters others from associating or dealing with the individual. *Kevorkian v American Medical Ass'n*, 237 Mich App 1, 5; 602 NW2d 233 (1999); *Ireland v Edwards*, 230 Mich App 607, 619; 584 NW2d 632 (1998). Generally, a plaintiff may establish a claim of defamation by showing:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionablity of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). [*Kevorkian, supra* at 8-9; *Ireland, supra* at 614.]

When addressing a defamation claim, a reviewing court is required to make an independent examination of the record to ensure against forbidden intrusions into the field of free expression. *Kevorkian, supra* at 5, citing *Ireland, supra* at 613.

---

[3] See our discussion later in this opinion regarding the need for a plaintiff bringing a defamation action involving a public figure to establish a genuine issue of material fact regarding actual malice by clear and convincing evidence as opposed to a mere preponderance of the evidence.

A. ABSOLUTE PRIVILEGE

In the present case, it is first necessary to determine whether the alleged defamatory communications made during school board meetings were absolutely privileged. Communications deemed absolutely privileged are not actionable, even when spoken with malice. *Froling v Carpenter*, 203 Mich App 368, 371; 512 NW2d 6 (1994); *Couch v Schultz*, 193 Mich App 292, 294; 483 NW2d 684 (1992).[4] The doctrine of absolute privilege is narrow and applies only to communications regarding matters of public concern. *Froling, supra.* The absolute privilege has generally been applied to communications made during legislative and judicial proceedings and to communications by military and naval officers. *Id.*; *Couch, supra.* The doctrine was extended to communications made by a public official in furtherance of an official duty during proceedings of subordinate legislative and quasi-legislative bodies. *Froling, supra* at 371-372, citing

---

[4] We note that MCL 600.2911(6); MSA 27A.2911(6) states:

An action for libel or slander shall not be brought based upon a communication involving public officials or public figures unless the claim is sustained by clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether or not it was false.

We interpret that section as codifying the common-law standard of proof necessary to overcome the qualified privilege applied to alleged defamatory communications involving public officials. Subsection 2911(6) does not preclude application of the more stringent absolute privilege, which protects communications even when spoken with malice. Well-settled common-law rules are not abolished by implication. *B&B Investment Group v Gitler*, 229 Mich App 1, 7; 581 NW2d 17 (1998). The Legislature is presumed to act with an understanding of common-law principles and, therefore, statutes are read in light of previously established common-law rules. *Nummer v Dep't of Treasury*, 448 Mich 534, 544; 533 NW2d 250 (1995); *B&B Investment Group, supra.*

*Gidday v Wakefield*, 90 Mich App 752, 755-756; 282 NW2d 466 (1979), citing *Wachsmuth v Merchants' Nat'l Bank*, 96 Mich 426; 56 NW 9 (1893), *Stewart v Troutt*, 73 Mich App 378; 251 NW2d 594 (1977), and *Brunn v Weiss*, 32 Mich App 428; 188 NW2d 904 (1971).

There are no Michigan cases considering whether a private citizen's statements during the proceedings of a quasi-legislative body that do not concern an ongoing public matter are absolutely privileged and we refuse to extend the narrow doctrine to apply to any such communications in this case. From the limited information in the lower court record, it appears that several of the alleged defamatory communications were made during official meetings of the Bentley School Board.[5] A duly convened meeting of a school board may constitute a proceeding of a quasi-legislative body that allows for application of the absolute privilege doctrine. *Stablein v Schuster*, 183 Mich App 477, 482; 455 NW2d 315 (1990); *Gidday, supra* at 755-756; see MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.* However, we hold that the particular circumstances under which the alleged communications were made in the present case do not support application of the absolute privilege.

The present case is distinguishable from cases where the absolute privilege has been applied given that the alleged defamatory statements here were made by private citizens as opposed to public offi-

---

[5] Given our ultimate determination that none of the alleged communications were absolutely privileged, it is unnecessary to address plaintiff's argument challenging the trial court's determination regarding whether certain of the alleged defamatory statements were made during school board meetings.

cials in the course of their official duties. However, it is not merely defendants' status as private citizens that compels us to hold the absolute privilege inapplicable. See *Joseph v Collis*, 272 Ill App 3d 200, 210-211; 649 NE2d 964 (1995) (applying the absolute privilege to statements made by the private citizen defendant during a legislative finance committee meeting of the city council alleging the public official plaintiff disclosed confidential financial information in violation of his duty as city alderman). Most compelling here is that none of the communications were made in resolution of a matter of public concern. *Froling, supra* at 371; see *Joseph, supra.*

We reject the notion that defendants' communications were absolutely privileged because they concerned the school board's decision to construct new administrative facilities. There is no doubt the Bentley School Board's decision to construct the new administrative facilities was a matter of public concern. However, none of the alleged communications were made during that decision-making process or directed to plaintiff or any board member during official proceedings. Cf. *Gidday, supra* at 756-757 (alleged defamatory statement made by the defendant township clerk to the township treasurer was determined absolutely privileged where the statement was made at a meeting of the township board of trustees during the process of resolving an issue concerning the security of a board member's documents); *Chonich v Ford*, 115 Mich App 461, 465-466; 321 NW2d 693 (1982) (communication by official on the Wayne County Community College Board of Trustees regarding a doctor's alleged improper use of funds was absolutely privileged where the statement was

made during the administration of the school's financial matters); *Domestic Linen Supply & Laundry Co v Stone*, 111 Mich App 827, 836; 314 NW2d 773 (1981) (statements of mayor and city purchasing director regarding the plaintiff at a city council meeting were made when they were called on during a legislative session to comment on the plaintiff's performance); see *Stewart, supra* at 384 (mayor's statement at a city council meeting regarding the plaintiff's failure to pay certain property taxes was made in the course of carrying out an official duty); see also *Parks v Johnson*, 84 Mich App 162, 167-168; 269 NW2d 514 (1978) (refusing to extend the doctrine of absolute privilege where the defendant school principal was not acting in a legislative or judicial capacity when she wrote an alleged libelous letter regarding the plaintiff). While defendants' communications were motivated by plaintiff's perceived involvement in the school board's decision to construct the administrative facility, they were not made during the resolution of the matter. Instead, each of the communications was made to individuals present at meetings after the school board's vote to construct the new administrative facility.

We refuse to extend the doctrine of absolute privilege to protect speech unrelated to an ongoing public matter simply because it was made in the confines of a legislative or quasi-legislative meeting. The absolute privilege has been applied to allow public officials to speak freely in the course of their official duties without fear of legal repercussions. See *Froling, supra* at 371; *Gidday, supra; Chonich, supra; Domestic Linen, supra* at 837. The same rationale does not apply to this case where defendants are alleged to have made

statements to citizens in attendance at school board meetings regarding plaintiff's prior job experiences and perceived involvement in the school board's decision-making process. The communications at issue were made at defendants' own discretion and initiative, not in connection with a subpoena to appear at the meeting or in response to specific questions by public officials. See *Vultaggio v Yasko*, 215 Wis 2d 326, 337, 340-341; 572 NW2d 450 (1998).[6] Just as a public official's attendance at a duly convened legislative or quasi-legislative proceeding does not afford him an invitation to undertake a slanderous campaign against whomever he pleases, concerning whatever he pleases, see *Chonich, supra* at 466, quoting *Gidday, supra* at 756, private citizens are not absolutely privileged to engage in unfettered speech simply because the statements are made during a legislative or quasi-legislative proceeding.

Our refusal to extend the narrow doctrine of absolute privilege will not have any chilling affect on citizens' free expression. Our holding does not alter citizens' rights to speak out against public policies or against the officials who implement or execute the policies. We simply hold that speech during legislative or quasi-legislative proceedings is not absolutely privileged merely because the communications are made

---

[6] The present circumstances clearly differ from cases holding communications are absolutely privileged when made by individuals testifying before a legislative body, *North Coast Cable Ltd Partnership v Hanneman*, 98 Ohio App 3d 434, 438-440; 648 NE2d 875 (1994); *Yip v Pagano*, 606 F Supp 1566, 1571-1572 (NJ, 1985); see *DeSantis v Employees Passaic Co Welfare Ass'n*, 237 NJ Super 550, 555-557; 568 A2d 565 (1990), or made in contemplation of a lawsuit, see *Snyder v AG Trucking, Inc*, 57 F3d 484, 489-490 (CA 6, 1995); *General Electric Co v Sargent & Lundy*, 916 F2d 1119, 1125-1128 (CA 6, 1990).

at a public meeting or loosely involve a public matter already resolved.[7]

Our holding with respect to the application of an absolute privilege does not end our inquiry. It is still necessary to determine whether defendants' communications were subject to a qualified privilege.

## B. QUALIFIED PRIVILEGE

Here, it is undisputed that plaintiff, as superintendent of the Bentley School District, was a public fig-

---

[7] We note that the alleged defamatory communications may also be subject to the fair reporting privilege provided by MCL 600.2911(3); MSA 27A.2911(3). That section provides, in pertinent part:

> Damages shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record, a public and official proceeding, or of a governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true headnote of the report. This privilege shall not apply to a libel which is contained in a matter added by a person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, which was not a part of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body.

Each of the alleged defamatory communications in the present case involved commentary regarding the public documents obtained from Algonac relating to plaintiff's character or prior job experience or commentary relating to plaintiff's perceived involvement in the Bentley School Board decision-making process. We need not consider whether there is sufficient evidence to conclude that the alleged communications were fair and true reports pursuant to MCL 600.2911(3); MSA 27A.2911(3). See *Northland Wheels Roller Skating Center, Inc v Detroit Free Press, Inc,* 213 Mich App 317, 324-328; 539 NW2d 774 (1995). As discussed later in this opinion, each of plaintiff's defamation claims is subject to a qualified privilege, MCL 600.2911(6); MSA 27A.2911(6), and, therefore, fails as a matter of law.

ure when each of the alleged defamatory communications was made. See, e.g., *New York Times Co v Sullivan*, 376 US 254, 279-283; 84 S Ct 710; 11 L Ed 2d 686 (1964); see also *Lakeshore Community Hosp, Inc v Perry*, 212 Mich App 396, 403; 538 NW2d 24 (1995) (a public figure attains such status by voluntarily assuming a role of special prominence in societal affairs). A public figure claiming defamation must prove by clear and convincing evidence that the publication was a defamatory falsehood and that it was made with actual malice through knowledge of its falsity or through reckless disregard for the truth. MCL 600.2911(6); MSA 27A.2911(6); *Kevorkian, supra* at 9; *Ireland, supra* at 615. This Court stated in *Ireland, supra*:

> "Actual malice is defined as knowledge that the published statement was false or as reckless disregard as to whether the statement was false or not. Reckless disregard for the truth is not established merely by showing that the statements were made with preconceived objectives or insufficient investigation. Furthermore, ill will, spite or even hatred, standing alone, do not amount to actual malice. 'Reckless disregard' is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher in fact entertained serious doubts concerning the truth of the statements published." [*Ireland, supra* at 622, quoting *Grebner v Runyon*, 132 Mich App 327, 332-333; 347 NW2d 741 (1984) (citations omitted).]

General allegations that privileged statements were false and malicious are insufficient to create a genuine issue of fact regarding whether a person published a statement with actual malice. *Reed v Michigan Metro Girl Scout Council*, 201 Mich App 10, 13-14; 506 NW2d 231 (1993). Whether evidence is suffi-

cient to support a finding of actual malice is a question of law. *Ireland, supra* at 622. "In considering a motion for summary disposition, a court must consider whether the evidence is sufficient to allow a rational finder of fact to find actual malice by clear and convincing evidence." *Id.*, citing *Anderson v Liberty Lobby, Inc,* 477 US 242, 254; 106 S Ct 2505; 91 L Ed 2d 202 (1986). Because a jury verdict in a defamation case involving a public figure may rest only on clear and convincing evidence of actual malice, to survive a motion for summary disposition in such a case, the nonmovant must show actual malice by clear and convincing evidence rather than by a mere preponderance. See *Anderson;* see also *New York Times Co, supra* at 279-280.[8] Clear and convincing evidence is defined as evidence that

> " 'produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' . . . Evidence may be uncontroverted, and yet not be 'clear and convincing.' . . . Conversely, evidence may be 'clear and convincing' despite the fact that it has been contradicted." [*In re Martin,* 450 Mich 204, 227; 538 NW2d 399 (1995), quoting *In re Jobes,* 108 NJ 394, 407-408; 529 A2d 434 (1987); see *People v Williams,* 228 Mich App 546, 557-558; 580 NW2d 438 (1998).]

---

[8] Insofar as plaintiff argues the trial court usurped the jury's role when it found defendants did not act with malice, that claim lacks merit. The trial court properly analyzed whether plaintiff showed by clear and convincing evidence that defendants published the alleged communications with knowledge of their falsity or reckless disregard for the truth in determining whether a question of fact exists for trial. MCL 600.2911(6); MSA 27A.2911(6); *Kevorkian, supra* at 9; *Ireland, supra* at 622, citing *Anderson, supra.*

We conclude that plaintiff has failed to prove by clear and convincing evidence that defendants made any of the alleged communications with actual malice and, thus, has failed to establish a defamation claim. First, plaintiff's claim regarding defendants' distribution of the April 1, 1992, letter from the Algonac School Board and several additional pages detailing the circumstances of plaintiff's departure fails as a matter of law. Plaintiff does not challenge the veracity of the letter, but claims the pages defendants attached thereto were not prepared by the Algonac School Board and contained false information suggesting plaintiff was terminated from his position on the basis of several serious allegations. The complained-of pages outline in specific detail eight allegations purported to have been lodged by the Algonac School Board against plaintiff, which range from gross insubordination to failure to develop community support for the policies and actions of the school board. Defendants do not dispute that they distributed the complained-of pages to several people in the Bentley School District. During his deposition, defendant Davidson testified that he received the complained-of pages from Algonac resident Jan Korn.[9] Defendant Davidson admitted those pages were "an extremely slanted restatement" of information contained in the Algonac School Board's evaluation of plaintiff and acknowledged that the complained-of pages lacked credibility because they were

---

[9] Korn's identity and the extent of her involvement is not clear from the lower court record. It appears Korn was involved in the proceedings that led to plaintiff's separation agreement or, at least, claimed to have detailed knowledge of the circumstances surrounding plaintiff's separation from the school district.

not signed and were poorly typed. Reckless disregard for the truth necessary to prove actual malice is not established by showing merely that a defendant acted with preconceived objectives or acted upon insufficient investigation. *Ireland, supra* at 622. In determining whether a defendant acted with actual malice, the question is not whether a prudent person would have published or would have investigated before publishing, but instead is whether the publisher entertained serious doubts regarding the truth of the statements published. *Id.* While defendant Davidson admitted the complained-of pages lacked credibility as official documents because of their unofficial appearance, that testimony is not clear and convincing evidence that defendants had serious doubts regarding the truth of the information. The allegations referenced in the complained-of pages are essentially a restatement of the general reasons for plaintiff's departure listed in the April 1, 1992, letter. Plaintiff does not challenge the substance of that letter. Given the reasons stated in the letter, it is not clear and convincing that defendants, upon reading the complained-of pages, would seriously doubt the truth of the additional information. MCL 600.2911(6); MSA 27A.2911(6).

Second, there was not clear and convincing evidence defendant Jennings acted with actual malice when she allegedly communicated that plaintiff was terminated from his position in Algonac for misappropriation of funds. Plaintiff generally alleged in his complaint that defendant Jennings publicly stated that he was fired because he misappropriated funds; however, the only evidence regarding such a statement is defendant Jennings' deposition testimony regarding her communication with one TV news

reporter during a school board meeting. According to defendant Jennings, the reporter, while browsing a stack of documents belonging to defendant Jennings, asked "did [plaintiff] get fired because he misappropriated funds?" In response, defendant Jennings admits she shook her head affirmatively, but explained: "I was actually shaking my head yes for her to be quiet because I wanted to listen to the Board meeting, I would agree to anything." There is no evidence challenging defendant Jennings' assertion that she made the gesture, not as a comment on plaintiff's conduct, but as a means of dismissing the reporter so that she could listen to the meeting. Defendant Jennings' conduct of refusing to talk to reporters after the meeting supports her claim that she did not intend to comment on plaintiff's actions. Consequently, there is not evidence of actual malice " 'so clear, direct and weighty and convincing' " to meet the clear and convincing evidence standard. *In re Martin, supra* at 227 (citation omitted); MCL 600.2911(6); MSA 27A.2911(6).

Third, plaintiff claims defendant Davidson falsely stated that plaintiff lied during a board meeting before the board's vote to construct the new administrative facilities when plaintiff stated the construction of new facilities was a "dead issue." Defendant Davidson cites plaintiff's issuance of the $30,000 check to a construction contractor before telling the Bentley School Board that the possibility of new construction was a "dead issue" as support for his statement. During the police investigation into plaintiff's conduct, plaintiff admitted issuing the check, but explained he did so to lock in lumber prices. According to plaintiff, the money was held in escrow until services were

rendered by the contractor. While we do not make any determination regarding the truth of defendant Davidson's statement that plaintiff lied to the school board, we conclude there is not clear and convincing evidence defendant Davidson made the statement with knowledge of its falsity or in reckless disregard for the truth. Plaintiff admits that a check was issued and proof that defendant Davidson made the complained-of statement upon insufficient investigation does not establish actual malice. MCL 600.2911(6); MSA 27A.2911(6); *Ireland, supra.*

Fourth, plaintiff's claim that defendant Davidson acted with actual malice when he stated plaintiff violated the law and was fired from his last job is not proved by clear and convincing evidence.[10] Defendant Davidson's statement that plaintiff violated the law was presumably made in reference to the criminal complaint filed by defendant Davidson. While several statements given to the police suggest a lawful explanation for plaintiff's issuance of the $30,000 check to the construction contractor, there is not clear and convincing evidence defendant Davidson made the subject statement with knowledge of its falsity or in reckless disregard of the truth. There is also insufficient evidence defendant Davidson acted with actual malice when he stated plaintiff was "fired" from his position as superintendent of the Algonac School Dis-

---

[10] In his complaint, plaintiff claimed defendant Davidson told several people plaintiff was not to be trusted, was incompetent, was guilty of mismanagement, violated the law, and was fired from his job in Algonac. However, on appeal, plaintiff does not challenge the trial court's ruling with respect to defendant Davidson's alleged statements that plaintiff cannot be trusted, was incompetent, and was guilty of mismanagement. Therefore, we do not review those specific allegations on appeal. See *City of Lansing v Hartsuff*, 213 Mich App 338, 351; 539 NW2d 781 (1995).

trict. While the April 1, 1992, letter from the Algonac School Board states plaintiff left his position in Algonac pursuant to a separation agreement,[11] the letter outlines several circumstances leading to the Algonac School Board's need to dismiss plaintiff from the position of superintendent. Specifically, the letter describes the separation agreement with plaintiff as "necessary to get our schools headed in the right direction." It then states there were many reasons for the board's decision regarding plaintiff and lists as the "most important": plaintiff's failure on more than one occasion to adhere to known purchasing policies of the Algonac Board of Education, plaintiff's failure to effectively deal with students' changed bussing times, plaintiff's failure to provide the board with timely financial information regarding its programs, plaintiff's failure to use good judgment in purchasing that resulted in the school district's financial trouble, and plaintiff's failure to establish and maintain effective communication with employees. The letter further explains that such circumstances "resulted in an erosion of trust" that prevented effective management of the school district. Given the circumstances described in the letter, it would not be wholly unreasonable for a person reading the letter to conclude plaintiff did not leave his position in Algonac on his own terms and, moreover, that he was effectively dismissed from the position. See *Random House Webster's College Dictionary* (1997), defining "fire," in part, as: "25. to dismiss from a job." Consequently, there is not clear and convincing evidence defendant Davidson acted

---

[11] The letter indicates plaintiff was paid $100,000 pursuant to the agreement.

with actual malice when he allegedly stated plaintiff was "fired" from his prior job. MCL 600.2911(6); MSA 27A.2911(6).

Fifth, there also is not clear and convincing evidence that defendant Davidson acted with actual malice when he told Bentley School Board member Marion Torok that the day before plaintiff was evicted plaintiff crawled out a second-story window of a dwelling he rented in Algonac and left the gas on.[12] That statement must be considered in context to determine whether it can reasonably be understood as stating actual facts about plaintiff. *Ireland, supra* at 618. We conclude the statement amounts to rhetorical hyperbole. *Kevorkian, supra* at 7-8; *Ireland, supra* at 618-619. A reasonable person hearing the statement would not believe it was actually true. In fact, Torok stated during her deposition that she found the story "kind of funny" and considered it "silly."

Finally, plaintiff generally argues that evidence suggesting defendants "simply had it in for plaintiff" establishes defendants acted with the necessary degree of actual malice. The evidence regarding the alleged defamatory communications, at most, creates an inference of malice. Given plaintiff's status as a public figure, a mere inference is insufficient to prove defamation. Plaintiff is required to prove by clear and convincing evidence that the alleged defamatory communications were made with actual malice. MCL

---

[12] The statement appears to have been loosely based on a letter from plaintiff's former landlord suggesting plaintiff left her house in poor condition when he moved. The letter specifically accuses plaintiff of leaving the valves of the gas grill on, but does not make any reference to plaintiff crawling out a second-story window.

600.2911(6); MSA 27A.2911(6); *Ireland, supra* at 622. " '[I]ll will, spite or even hatred, standing alone, do not amount to actual malice.' " *Id.,* quoting *Grebner, supra* at 333. For the reasons discussed herein, plaintiff has failed to meet the clear and convincing evidence standard.

### CONCLUSION

None of the alleged defamatory communications were absolutely privileged.[13] However, because it is undisputed plaintiff was a public figure, the alleged defamatory statements are subject to a qualified privilege. Plaintiff has failed to establish by clear and convincing evidence that any of the alleged defamatory statements were made with knowledge of their falsity or in reckless disregard for the truth. Therefore, there is no genuine issue of material fact regarding any of plaintiff's defamation claims and the trial court properly granted summary disposition for defendants.

Affirmed.

---

[13] Insofar as the trial court granted summary disposition on the basis of the doctrine of absolute privilege, we will not reverse where the trial court reached the right result for the wrong reason. *Hall v McRea Corp,* 238 Mich App 361, 369; 605 NW2d 354 (1999).