# STATE OF MICHIGAN

# COURT OF APPEALS

FJN LLC, GINO'S SURF, FRANK'S
HOLDINGS, LLC, FRANK NAZAR, SR, and
FRANK NAZAR, JR,

Plaintiffs-Appellants,

v

VIJAY PARAKH and CHARTER TOWNSHIP of
HARRISON,

Defendants-Appellees.

UNPUBLISHED
June 22, 2017

No. 331889
Macomb Circuit Court
LC No. 2012-002006-CZ

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Plaintiffs appeal by right a February 9, 2016, trial court order granting summary disposition in favor of defendant Vijay Parakh pursuant to MCR 2.116(C)(10). For the reasons in this opinion, we affirm.

## I. FACTUAL BACKGROUND

Plaintiffs Frank Nazar, Sr, and Frank Nazar, Jr, through their corporate entities, owned and operated a restaurant and banquet hall known as Gino's Surf or Gino's Surf Lounge in Harrison Township. In 2006, the Township Planning Commission approved a site plan for a Phase 1 renovation of the property. In the Phase I renovation, plaintiffs planned to construct an outdoor patio and tiki bar. During the Phase I construction, plaintiffs submitted plans for a Phase II renovation, which was described as an antique car museum and restaurant. In the spring of 2007, the Planning Commission approved plans for the Phase II renovation. Plaintiffs procured all of the necessary permits and started work on Phase II.

On January 10, 2008, the Township issued a certificate of occupancy for the Phase I renovation. By February 6, 2009, construction on Phase II was complete and plaintiffs alleged that they were entitled to a certificate of occupancy at that point pursuant to the Harrison Township Zoning Ordinance. Plaintiffs planned to hold a grand opening event at the new facility and advertised the event in the local newspaper. However, defendant Parakh, who at the time was the Township's building officer, informed plaintiffs that they did not have a certificate of occupancy for the Phase II facility, and therefore Phase II could not be opened to the public. Plaintiffs proceeded with the planned event and scheduled it for the evening of February 6, 2009.

-1-

According to plaintiffs, the Phase II section of the facility was not opened. Plaintiffs alleged Parakh and two ordinance officers appeared at the event to ensure that plaintiffs were not using Phase II portions of the property. Plaintiffs alleged that Parakh attempted to shut down the event, informing customers that they had to leave and that the business was about to be shut down. Plaintiffs alleged that Parakh defamed their business to the customers.

After the grand opening, Parakh drafted a report for the Township Board of Trustees' (the Board) February 9, 2007, meeting. In the report, Parakh indicated that he informed plaintiffs prior to the grand opening that they could not use Phase II and directed an ordinance officer to post a "Danger" placard at the site. Parakh stated that plaintiffs did not have a certificate of occupancy for Phase II, did not have liability insurance and had "outstanding building violations." Nevertheless, according to Parakh, he learned that plaintiffs would disregard his directive and use Phase II portions of the building without a certificate of occupancy. Parakh indicated that on the night of the grand opening he went with two ordinance officers to investigate and noted that, "Upon approaching Gino's Surf, it was clear pandemonium and the scene was horrifying-it was clearly 'out of control' in the words of many." Parakh reported that there were vehicles parked everywhere including on both sides of the street and in the ditch and people were crossing the street "with oncoming traffic, limited visibility and poor lighting with no cross walk or safe passageway in icy, slippery conditions." Parakh noted that there were 250 patrons in the Phase II area and "hundreds more" in the old area. Parakh indicated that the notices he placed at the scene were covered up and that he learned that plaintiffs "were making people go through a plastic flammable and combustible passage way with 3-4 large free-standing propane heaters." Parakh reported that the "plastic passageway" was a serious safety violation.

Parakh indicated that the scene was "no different than that of the Chicago Night Club Fire and the Rhode Island Night Club Fire where hundreds of people lost their lives due to overcrowding." Parakh indicated that he contacted the sheriff's office and the fire department. The sheriff's deputies arrived at the scene, but they "cleared" the scene and left without issuing any citations. The fire chief instructed a deputy to create a lane to allow access for emergency vehicles.

Other parts of the report indicated that plaintiffs did not have an accurate headcount of how many people or vehicles were at the scene and that exits and exit signs were blocked. Parakh indicated that he would have been "derelict in his duties" and exposed the Township to liability by allowing the grand opening to take place in an "unsafe portion of a building under construction." Parakh indicated that plaintiffs' prior conduct with other matters led to "hundreds of resident complaints about overcrowding, parking, safety and noise." Parakh stated that plaintiffs had multiple other prior building violations and noted that plaintiff Frank Nazar, Sr, had a "history" of non-compliance.

On October 30, 2009, plaintiffs commenced suit in the U.S. District Court for the Eastern District of Michigan, alleging that defendants violated their substantive due process rights in denying them a certificate of occupancy. That suit eventually went to a jury trial and on June 10, 2014, the jury found in favor of plaintiffs, awarding approximately $800,000 in economic damages against defendants jointly and $400,000 in punitive damages against Parakh individually. The federal proceedings are not at issue in this case.

In the meantime, on May 2, 2012, plaintiffs filed a 67-page, 349-paragraph complaint commencing this state court suit in the circuit court; plaintiff alleged four counts: Count I sought a declaratory order compelling defendants to issue a certificate of occupancy, in Counts II-IV plaintiffs alleged claims for libel and slander based on the allegedly false statements Parakh made concerning plaintiffs' business and the Nazars personally.

On July 6, 2012, defendants moved for partial summary disposition with respect to Counts II-IV on grounds that the claims were barred by governmental immunity. The trial court granted the Township's motion, holding that plaintiffs did not allege facts to show that the Township was vicariously liable for any wrongful conduct on the part of Parakh. The court denied Parakh's motion, holding that there were factual questions regarding whether Parakh's conduct amounted to gross negligence that was the proximate cause of plaintiffs' injuries. Parakh then moved for reconsideration, and the court denied the motion. In denying the motion, the court noted that, "plaintiffs' claims for libel and slander will be limited to defendant Parakh's statements unrelated to the use of the facility without a certificate of occupancy for the Phase II improvements."

On November 13, 2012, Parakh appealed the trial court's denial of his motion for summary disposition and plaintiffs cross-appealed the court's order granting summary disposition in favor of the Township. Plaintiffs also appealed the court's holding that their libel and slander claims against Parakh were limited to statements "unrelated to the use of the facility without a certificate of occupancy." The trial court stayed the proceedings pending the appeal.

On March 21, 2014, in a 2-1 decision, this Court, (JANSEN, P.J., OWENS and SHAPIRO, JJ) affirmed the trial court's order. *FJN, LLC v Parakh*, unpublished opinion per curiam of the Court of Appeals, issued March 21, 2014 (Docket No. 313294). The panel held that the trial court reached the correct result albeit for the wrong reasons, explaining that the trial court erred in applying a negligence analysis to plaintiffs' intentional tort claims. Slip op. at 3-4. This Court explained as follows:

> The court ruled that "Parakh acted within the scope of his authority in writing the Report" and that this general activity related to "his inspection/investigation of possible violations of the Zoning Ordinance" and therefore, he "was involved in a governmental function." But the court ruled that defendant Parakh was not entitled to summary disposition because "the allegedly damaging statements in defendant Parakh's Report and his other alleged verbal statements are not limited to those connected to the lack of a certificate of occupancy" and "these other statements can be the proximate cause of plaintiffs' damages." Therefore, the court implicitly concluded that there was a genuine issue of material fact with respect to whether defendant Parakh was grossly negligent and whether his gross negligence was a proximate cause of plaintiffs' damages.
>
> The problem with the trial court's analysis is that plaintiffs did not plead a negligent tort, but rather pleaded claims for libel and slander, which are intentional torts. []

-3-

The trial court erred by analyzing defendant Parakh's request for immunity under the test for a negligent tort set forth in MCL 691.1407(2) rather than the test set forth in [*Ross v Consumers Power Co (On Reh)*, 420 Mich 567, 633-634; 363 NW2d 641 (1984).], which governs entitlement to immunity for an intentional tort. [*Id*. at 3-4.]

A majority of this Court[1] proceeded to hold that the trial court nevertheless arrived at the correct result with respect to Parakh because there was a genuine issue of fact with respect to whether Parakh acted "in good faith and without malice." *Id*. at 4. This Court explained:

The trial court's implicit gross negligence determination was based on the fact that defendant Parakh's statements went beyond the certificate of occupancy issue and defendant Parakh failed to contradict plaintiffs' falsity claims. The same reasoning shows that there is also a question of fact regarding whether defendant Parakh acted in good faith. [] Plaintiffs alleged in their complaint that defendant Parakh made statements he knew were false with the intent to destroy plaintiffs' business, and defendant Parakh did not offer any evidence to support the truth of any of the statements except the lack of occupancy certificate and the advertised grand opening party. As the trial court recognized, defendant Parakh's report included numerous allegations of dangerous conditions that went well beyond opening without an occupancy certificate. Accordingly, we agree that there is an issue of fact whether defendant Parakh acted in good faith and without malice. Therefore, the trial court reached the correct result in denying defendant Parakh's motion for summary disposition. [*Id*. at 4.]

Similarly, this Court held that the trial court arrived at the correct result with respect to the Township, reasoning that the Township "was not liable for defendant Parakh's alleged libel and slander." This Court also concluded that the trial court did not err in limiting plaintiffs' defamation claims to "defendant Parakh's statements unrelated to the use of the facility without a certificate of occupancy for the Phase II improvements," but noted that the trial court "will need to determine which alleged statements" were subject to the defamation claims. *Id*. at 5-6.

After this Court affirmed the trial court, the trial court entered an order identifying which statements from Parakh's report were subject to the defamation claims. Thereafter, on March 23, 2015, Parakh moved for summary disposition pursuant to MCR 2.116(C)(10). Parakh argued that the report was "absolutely privileged" because it was prepared for the Board in the course of Parakh's duties as building official. Parakh also argued that plaintiffs' defamation claims failed because the statements were not defamatory, the statements were not published to a third party, and because there was no evidence that the statements caused any damages.

---

[1] JANSEN, P.J., dissented in part, reasoning that Parakh's report was absolutely privileged and therefore plaintiffs' defamation claims failed as a matter of law. *FJN, LLC v Parakh*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2014 (Docket No. 313294) (JANSEN, P.J., concurring in part, dissenting in part).

Plaintiffs responded, and filed a counter-motion for summary disposition as to Claim I, requesting that the court order the Township to issue a certificate of occupancy for the Phase II development. With respect to the defamation claims, plaintiffs argued that the report was not entitled to an absolute privilege. Plaintiffs argued that there was evidence to show that information from the report appeared in an article posted on the Macomb Daily's website before the Board held its meeting. In addition, plaintiffs attached a printed newspaper article from the Macomb Daily that contained information from the report. Plaintiffs also cited the Board's meeting minutes from February 9, 2009, that did not make any mention of the report or incident. In addition, Frank, Sr., testified at a deposition that members of the community came to him and indicated that the report had appeared in their mail. Plaintiffs argued that this evidence showed that Parakh made unprivileged communications with third parties and that he published the defamatory statements to a third party.

With respect to damages, plaintiffs argued that they did not need to prove damages at the summary disposition stage. Moreover, plaintiffs argued that the report was not introduced in the federal trial and therefore they did not recoup damages arising from the defamatory statements in the federal trial. Plaintiffs attached a report from a forensic accountant that allegedly showed that Parakh's report resulted in $688,000 to $1.0 million in damages.

On February 19, 2016, the trial court entered an opinion and order granting Parakh's motion for summary disposition as to Counts II-IV and granting plaintiffs' summary disposition and declaratory relief as to Count I. With respect to Counts II-IV, the court reasoned those plaintiffs' "objections to defendant Parakh's assertion of absolute immunity lack merit," explaining:

> The [trial court] Opinion and Order dated September 20, 2012, determined defendant Parakh had acted within the scope of his authority in writing the Report. Given the public safety aspect of the inspections and defendant Parakh's obligation to advise of his official acts, the Report clearly concerned ongoing matters of public interest. Indeed, the Report ended with a request that sought 'direction from the Board of Trustees on how to handle similar situations in the future' . . . Therefore, defendant Parakh is entitled to absolute immunity for the Report. []

> Furthermore, plaintiffs have not proffered any evidence that defendant Parakh provided the Report to a third party. Plaintiffs' timing argument is nothing more than unsupported conjecture and speculation; the Report could just as likely have been disseminated by the township clerk, a trustee, another township employee, a Freedom of Information Act request or plaintiffs. In this regard, defendant Parakh has no obligation to prove how third parties obtained the Report; plaintiffs bear the burden of proving an unprivileged communication to a third party as an element of their defamation claims.

With respect to Count I, the request for declaratory relief, the trial court granted plaintiffs declaratory relief and ordered the Township to issue a certificate of occupancy. That aspect of the court's order is not at issue on appeal. Plaintiffs appeal the trial court's order with respect to its disposition of Claims II-IV.

-5-

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270-271; 826 NW2d 519 (2012). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Id.*

## III. ANALYSIS

The trial court held that plaintiffs' defamation claims failed as a matter of law because Parakh's report was absolutely privileged. Plaintiffs argued that this amounted to legal error.

"A communication is defamatory if, under all of the circumstances, it tends to so harm the reputation of an individual that it lowers the individual's reputation in the community or deters others from associating or dealing with the individual." *Kefgen v Davidson*, 241 Mich App 611, 617; 617 NW2d 351 (2000). The elements of a defamation claim are as follows:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Id.* (quotation marks and citations omitted).]

However, certain statements are absolutely privileged and therefore not subject to a defamation claim. *Couch v Schultz*, 193 Mich App 292, 294; 483 NW2d 684 (1992). "An absolutely privileged communication is one for which no remedy is provided for damages in a defamation action because of the occasion on which the communication is made." *Id.* "A privileged occasion is an occasion where the public good requires that a person be freed from liability for the publication of a statement that would otherwise be defamatory." *Id.* "If a statement is absolutely privileged, it is not actionable even if it was false and maliciously published." *Oesterle v Wallace*, 272 Mich App 260, 263-264; 725 NW2d 470 (2006). "The absolute privilege has generally been applied to communications made during legislative and judicial proceedings and to communications by military and naval officers." *Kefgen*, 241 Mich App at 618. In addition, in *Froling v Carpenter*, 203 Mich App 368; 512 NW2d 6 (1994), this Court extended the doctrine to "communications made by a public official *in furtherance of an official duty* during proceedings of subordinate legislative and quasi-legislative bodies." *Kefgen*, 241 Mich App at 618, citing *Froling*, 203 Mich App at 368 (emphasis added).

This Court previously left open the issue of what statements were subject to plaintiffs' defamation claims. On remand, the trial court parsed out aspects of Parakh's report that were subject to the defamation claims. Necessarily, this Court did not address whether those statements were absolutely privileged. However, we can now glean from the record that Parakh was acting within the scope of his authority when he prepared the report for the Board. Parakh, as building official, had authority under the zoning ordinance to issue certificates of occupancy, which necessarily included the authority to inspect establishments before issuing the certificates.

In addition, Parakh had authority to administer and enforce various ordinance provisions. By inspecting plaintiffs' premises and preparing a report for the Board with the observations of his inspection, the report was of a public concern and was prepared "in furtherance of an official duty" and for a quasi-legislative proceeding. *Kefgen*, 241 Mich App at 618. Accordingly, the report was absolutely privileged. *Id*.

Plaintiffs argue that Parakh distributed the report to the media and attached copies of a Macomb Daily News article that addressed the contents of Parakh's reports, contained a photograph of Parakh, and quoted Parakh. However, plaintiffs do not cite, and we cannot glean any evidence from the record to support that Parakh prepared the report for the purposes of disclosing it to the media. Instead, the record shows that the report was prepared in furtherance of Parakh's official duty as building officer for purposes of dissemination at a quasi-legislative proceeding. Accordingly, the report was absolutely privileged[2] and, where "a statement is absolutely privileged, it is not actionable even if it was false and maliciously published." *Oesterle*, 272 Mich App at 263-264. Plaintiffs' defamation claims therefore failed as a matter of law and the trial court did not err in granting Parakh's motion for summary disposition as to Counts II-IV.[3] *Couch*, 193 Mich App at 294.

Affirmed. Defendants having prevailed may tax costs. MCR 7.219(A).


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello

---

[2] Plaintiffs argue that Parakh failed to raise the affirmative defense of privilege in his answer; however, Parakh asserted the affirmative defense of immunity, and privilege is a form of immunity. Therefore, plaintiffs were on notice of the privilege defense. MCR 2.111(F).

[3] Given our resolution of this issue, we need not address the other issues raised by plaintiffs on appeal.