# STATE OF MICHIGAN

# COURT OF APPEALS

MEMBERSELECT INSURANCE COMPANY,

        Plaintiff-Appellant,

v

DANIELLE GUZMAN and JARETTE McCOMB,

        Defendants-Appellees.

UNPUBLISHED
December 4, 2018

No. 338162
Macomb Circuit Court
LC No. 2016-001749-CK

Before: O'BRIEN, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

In this action seeking a declaratory judgment, plaintiff appeals by leave granted the trial court's denial of its motion for summary disposition. Because the insurance policy expressly excludes coverage under the circumstances presented, we reverse and remand for entry of summary disposition in favor of plaintiff.

## I. BASIC FACTS

Plaintiff is the issuer of a homeowner's insurance policy to defendant Jarette McComb. McComb operated his business, Dynamite Window Cleaning, which was a sole proprietorship at the time. McComb occasionally contracted with other individuals, including his friend, defendant Danielle Guzman, to assist him. McComb also helped perform maintenance at various properties which were owned or managed by Cheryl Velloney. As he did with his window washing business, McComb would enlist the help of various people to help with the property maintenance.

On the afternoon of May 29, 2013, Guzman had been helping McComb with cleaning windows. Afterward, Guzman and McComb went to eat lunch at McComb's home. Velloney had asked McComb to mow one of her properties in Warren, and Guzman agreed to help McComb. So McComb and Guzman tried to load McComb's (self-propelled) push lawnmower into the back of McComb's pickup truck. At the time, the tailgate on McComb's pickup truck could not be opened, so the two of them had to lift the mower over the tailgate. During this process, the two placed the mower so it was resting on the tailgate, to allow Guzman to move some ladders that were still in the bed of the truck. McComb slid the mower forward so its rear wheels would "hang" on the tailgate, but the wheels travelled over the tailgate and dropped straight down into the bed of the truck. The dropping of the mower caused a part of the mower

-1-

to strike Guzman in the head. After a break, McComb and Guzman drove in the pickup truck to the Warren property, where the two took turns mowing the grass.

But five days after the incident, Guzman went to the hospital complaining of increasing pain in his head. Since the hospital visit, Guzman has been treating with a neurologist. Following the incident, Guzman did not perform any other work for McComb. McComb also testified that he, himself, stopped doing the property preservation work within a year after the incident.

Guzman filed an action against McComb alleging that McComb's negligence caused his injuries. With McComb's auto insurance policy having lapsed, McComb then demanded that plaintiff, pursuant to the homeowner's policy, defend and indemnify him against Guzman's claim.

Plaintiff thereafter filed the instant declaratory judgment action, in which it sought a declaration that because the policy excluded coverage, it had no duty to defend or indemnify McComb in connection with the underlying action. Plaintiff moved for summary disposition, arguing that there was no coverage under the policy's "land motor vehicle" exclusion because the incident arose out of McComb's use of a land motor vehicle. Plaintiff also argued that the "business pursuits" exclusion in the policy applied because the pickup truck and lawnmower were being used for McComb's business pursuits. The trial court denied plaintiff's motion. With regard to the land-motor-vehicle exclusion, the court ruled that the exclusion did not apply because plaintiff failed to present any evidence that the vehicle "produced" Guzman's injury. And with respect to the business-pursuits exclusion, the trial court found that a genuine question of fact existed. Specifically, the court determined that there was a factual question of whether there was "a degree of continuity" to McComb's property preservation work because he "did not have a set number of lots or properties" for which he mowed the lawn "on a regular basis."

Plaintiff's appeal to this Court followed.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10) de novo.[1] *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Dalley v Dykema Gossett*, 287 Mich App 296, 304 n 3; 788 NW2d 679 (2010). When deciding a motion for summary disposition under this rule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties

---

[1] Oddly, plaintiff cited both MCR 2.116(C)(8) and (10) in its motion for summary disposition, but summary disposition under MCR 2.116(C)(8) is for a *defendant* to utilize when a plaintiff has not "state[d] a claim on which relief can be granted." Accordingly, it is clear that plaintiff's motion truly was based on MCR 2.116(C)(10). In any event, because the parties and the trial court considered documentary evidence beyond the pleadings, MCR 2.116(C)(10) is the proper court rule. See *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000).

in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006). The motion is properly granted if the evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

Further, this Court reviews the interpretation of an insurance policy de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

### III. IS COVERAGE BARRED UNDER THE TERMS OF THE POLICY?

Plaintiff argues that it is entitled to summary disposition because the express terms of the policy preclude coverage under the circumstances presented. We agree. This case involves the proper interpretation of the insurance policy plaintiff issued to McComb.

> We enforce contracts according to their terms, as a corollary to the parties' liberty to enter into a contract. We examine contractual language and give the words their plain and ordinary meanings. An unambiguous contractual provision reflects the parties' intent as a matter of law, and if the language of the contract is unambiguous, we construe and enforce the contract as written. Courts may not create an ambiguity when contract language is clear. Rather, this Court must honor the parties' contract, and not rewrite it. [*Kendzierski v Macomb Co*, 319 Mich App 278, 282; 901 NW2d 111 (2017) (quotation marks, citation, and brackets omitted).

Further, while an insured bears the burden of proving that his claim falls within the terms of the policy, it is the insurer who "must prove that an exclusion to coverage is applicable." *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 161 n 6, 172; 534 NW2d 502 (1995) (quotation marks and citation omitted).

Plaintiff claims that two exclusions contained in the policy, either of which would preclude coverage, apply in the instant case. The homeowner's policy that plaintiff issued to McComb contains the following exclusions:

**BODILY INJURY AND PROPERTY DAMAGE NOT COVERED**

Under Part II, **we** will not cover:

1. **bodily injury** or **property damage** arising out of an **insured person's** ownership, maintenance, use or negligent entrustment of . . . any of the following:

\* \* \*

    b. a land motor vehicle which is owned, operated or used by . . . an **insured person**. . . .

\* \* \*

3. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured person**.

Because either exclusion would independently preclude coverage, if the business pursuits-exclusion applies in this case, we need not address the land-motor-vehicle exclusion. It is not disputed for the purposes of this motion that Guzman suffered a bodily injury. What is disputed is whether the insured, McComb, was engaging in a "business pursuit" at the time of Guzman's injury. We hold that he was.

The policy does not define "business pursuits," but it does define "business" as "any full or part-time trade, profession or occupation." This Court has held that an activity constitutes a "business pursuit" if it is performed with continuity and for profit. *State Mut Cyclone Ins Co v Abbott*, 52 Mich App 103, 108; 216 NW2d 606 (1974). Continuity requires either a "customary engagement or a stated occupation." *Id.* (citation omitted). An activity is conducted for profit if it is performed "as a means of livelihood, gainful employment, [a] means of earning a living," or to procure "subsistence or profit." *Id.* (citation omitted). "Commercial transactions or engagements" also satisfy the profit element. *Id.* (citation omitted). In *Abbott*, the defendant was engaged in his part-time business as a farrier when he struck a horse in the ribcage while shoeing it, and the horse then struck and injured its owner. *Id.* at 107. This Court held that the business-pursuits exclusion applied because the defendant, albeit only employed part-time as a farrier, nevertheless was "customarily employed as a farrier for profit." *Id.* at 108.

Here, McComb testified that he is in the business of cleaning windows through his company. He estimated that he cleans windows approximately four days a week. But he also testified that he earned income performing "property preservation" in which he maintained and repaired properties. Velloney, who managed numerous properties, contacted him to perform repair and maintenance work as needed. She told him how much she would pay for a job, and McComb would text her or send her a written bill after completing the job. On the day of the incident, Guzman agreed to help McComb mow the lawn at one of Velloney's properties. Guzman was injured when they loaded the lawnmower into McComb's pickup truck to transport it to the property. McComb testified that he continued to perform property preservation work for Velloney for up to a year after the incident.

There is no doubt that McComb performed the property preservation work with the motive of making a profit. The trial court opined that a material question of fact existed regarding whether the work was "continuous" because McComb did not have "a set number" of properties that he mowed on a regular basis. The trial court erred. First, McComb testified that he performed more than merely lawn-mowing services; he stated that he would perform whatever maintenance work Velloney needed done. Second, the fact that there was no set schedule or a set list of properties is not determinative. This Court recognized in *Abbott* that continuity requires either a "customary engagement" or a "stated occupation." *Abbott*, 52 Mich App at 108. Here, it was "customary" for Velloney to contact McComb when his services were needed. In addition, the fact that McComb primarily considered himself to be a window washer is not particularly relevant. The policy's definition of "business" includes "any full or part-time trade, profession or occupation," and the farrier in *Abbott*, who was found to meet the continuity

requirement, operated his business on a part-time basis. Therefore, we hold that there is no question of fact whether McComb was engaging in a business pursuit at the time of the accident—he was; McComb's property preservation work was profit motivated and the activity had a sufficient amount of continuity. Accordingly, the business-pursuits exclusion applies, and the trial court erroneously denied plaintiff's motion for summary disposition on that basis.

Defendant's reliance on *Randolph v Ackerson*, 108 Mich App 746; 310 NW2d 865 (1981), is misplaced. In *Randolph*, the defendant purchased a barn, razed it, and moved the resulting wood onto his own property. *Id.* at 747, 749. After responding to the defendant's advertisement, the plaintiff purchased some of the barn wood. The plaintiff was injured while he and the defendant were loading the wood onto the plaintiff's truck. *Id.* at 747. The *Randolph* Court held that the business-pursuits exclusion did not apply because, although the activity was undoubtedly profit motivated, it was a single incident and, therefore, did not constitute "continuous" activity. *Id.* at 748-749. The Court stressed that defendant had never engaged in the razing of barns for wood as a profit-making activity either before the incident in question or at any time thereafter. *Id.* But *Randolph* is distinguishable from the present case on its facts because unlike the defendant in *Randolph*, McComb here did not engage in his property preservation activity on only a single occasion. Rather, there was evidence that McComb had done this type of work for Velloney many times before the incident and continued to do so for "up to a year" afterward.

Reversed and remanded for entry of summary disposition in favor of plaintiff. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Jonathan Tukel
/s/ Anica Letica