J. B. Sullivan, J.
Defendants American Medical Association (ama); M. Roy Schwarz, M.D.; James S. Todd, M.D.; Mark T. Wolfe; Kirk B. Johnson; Michigan State Medical Society (msms); and William E. Madigan were granted leave to appeal from the trial court’s denial of their motions for summary disposition pursuant to MCR 2.116(C)(8). We reverse and remand.
*4 On February 9, 1996, plaintiff Jack Kevorkian, possibly the best known and most controversial proponent of assisted suicide, filed suit against defendants, alleging that he had been defamed. Specifically, plaintiff claimed that on October 10, 1995, defendant Johnson, acting as general counsel on behalf of defendant AMA, published a letter to Michigan Attorney General Frank Kelley and to defendants Madigan and MSMS stating that plaintiff “perverts the idea of the caring and committed physician,” “serves merely as a reckless instrument of death,” “poses a great threat to the public,” and engages in “criminal practices.” Plaintiff further alleged that defendants Todd and Wolfe, defendant ama’s executive vice president and public information officer, respectively, issued a news release alleging “continued killings” and “criminal activities” by plaintiff. Plaintiff also alleged that defendant Schwarz, defendant ama’s vice president for professional standards, published false and defamatory statements to the media calling plaintiff “a killer.” Finally, plaintiff alleged that defendants MSMS and its executive director, defendant Madigan, published and distributed the statements made by the other defendants.
All defendants moved for summary disposition, arguing that the statements were constitutionally protected expressions of opinion. Plaintiff argued that false statements of fact and accusations of criminal conduct are not constitutionally protected as opinions. On May 21, 1997, the trial court entered its opinion and order denying defendants’ motions. The trial court concluded that the statements at issue were statements of fact and therefore not constitutionally protected and that they constituted libel per se *5 because referring to plaintiff as both a criminal and a killer in the same document could lead to the inference that plaintiff was a murderer.
This Court reviews a trial court’s decision regarding a motion for summary disposition de novo. Hawkins v Mercy Health Services, Inc, 230 Mich App 315, 324; 583 NW2d 725 (1998). MCR 2.116(C)(8) permits summary disposition when a plaintiff has failed to state a claim on which relief can be granted; a motion pursuant to MCR 2.116(C)(8), therefore determines whether the plaintiff’s pleadings allege a prima facie case. Garvelink v Detroit News, 206 Mich App 604, 607; 522 NW2d 883 (1994). The motion may be granted only where the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. Id., p 608. When addressing defamation claims, appellate courts must make an independent examination of the record to ensure against forbidden intrusions into the field of free expression. Ireland v Edwards, 230 Mich App 607, 613; 584 NW2d 632 (1998). Summary disposition is an essential tool in the protection of First Amendment rights. Id., n 4.
A communication is defamatory if, considering all the circumstances, it tends to so harm the reputation of an individual as to lower that individual’s reputation in the community or deter third persons from associating or dealing with that individual. Ireland, supra, p 619, citing Sawabini v Desenberg, 143 Mich App 373, 379; 372 NW2d 559 (1985). However, not all defamatory statements are actionable. Ireland, supra, p 614. For example, the United States Supreme Court has rejected the idea that all statements of opinion are protected and has directed that the defamatory *6 statement must be provable as false to be actionable. Id., p 616, citing Milkovich v Lorain Journal Co, 497 US 1, 17-20; 110 S Ct 2695; 111 L Ed 2d 1 (1990). In Milkovich, the Court by way of example distinguished the actionable statement, “In my opinion Mayor Jones is a liar,” from the nonactionable statement, “In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin.” Ireland, supra, p 616. The Court apparently intended to distinguish between an objectively verifiable event in the former case and a subjective assertion in the latter. Id., citing Milkovich, supra, pp 21-22. Similarly, in Ireland, we concluded that the statement that plaintiff Ireland was not a fit mother was necessarily subjective and was therefore not actionable. Id., p 617. We note, however, that a statement may be necessarily subjective and also be objectively verifiable. A statement that plaintiff is a murderer, which the trial court found to be implied from defendant’s statements, falls into that categoiy.
The Supreme Court has also determined that defamatory statements, in order to be actionable, must state actual facts about a plaintiff, thereby protecting statements that, although factual on their face and provable as false, could not reasonably be interpreted as stating actual facts about the plaintiff. Ireland, supra, p 617, citing Milkovich, supra, pp 16-17, and Hustler Magazine, Inc v Falwell, 485 US 46, 50; 108 S Ct 876; 99 L Ed 2d 41 (1988). Generally included as such protected speech are parodies, political cartoons, and satires. Ireland, supra, p 617, citing Garvelink, supra, p 610. In Ireland, we concluded that the statement that Ireland “never” spent time with her child was patently false and an obvious
*7 expression of disapproval of the amount of time Ireland spent with her child, but that no reasonable person would believe the statement stated actual facts about Ireland. Ireland, supra, p 619. However, it is also clear that two completely conflicting statements can “state actual facts” about an individual. In other words, plaintiffs acts of assisted suicide, for example, can be described as murder or mercy, and any reasonable person could understand that both or neither could be taken as stating actual facts about plaintiff.
The Supreme Court has further recognized that statements must be viewed in context to determine whether they are capable of defamatory interpretation, or whether they constitute no more than “rhetorical hyperbole” or “vigorous epithet.” Ireland, supra, p 618, citing Greenbelt Cooperative Publishing Ass’n, Inc v Bresler, 398 US 6, 14; 90 S Ct 1537; 26 L Ed 2d 6 (1970). Thus, some expressions of opinion are protected. Ireland, supra, p 614, citing Milkovich, supra, pp 18-20; Hodgins v Times Herald Co, 169 Mich App 245, 253; 425 NW2d 522 (1988), citing Gertz v Robert Welch, Inc, 418 US 323, 339; 94 S Ct 2997; 41 L Ed 2d 789 (1974). For example, in Greenbelt, supra, a real estate developer was involved in simultaneous negotiations with the city of Greenbelt, Maryland. Because the developer was both selling land to the city and seeking a zoning variance from the city, a local newspaper printed articles reporting that community members described his bargaining position as “blackmail.” The Supreme Court rejected the developer’s argument that the newspaper effectively charged him with the crime of blackmail, and concluded that “even the most careless reader must have perceived that the word [blackmail] was no more than rhetorical hyper *8 bole . . . Ireland, supra, p 618, citing Greenbelt, supra, p 14. In Hodgins, supra, p 254, referring to Greenbelt, supra, we noted that “[exaggerated language used to express opinion, such as ‘blackmailer,’ ‘traitor’ or ‘crook,’ does not become actionable merely because it could be taken out of context as accusing someone of a crime.” Into this category, we would place statements that are both necessarily subjective and objectively verifiable, and statements that both do and do not state actual facts about a person.
Statements that are not protected and therefore are actionable include false statements of fact, i.e., those that state actual facts but are objectively provable as false and direct accusations or inferences of criminal conduct. Hodgins, supra, p 253. Language that accuses or strongly implies that someone is involved in illegal conduct crosses the line dividing strongly worded opinion from accusation of a crime. Id., p 254. Indeed, this Court has stated that an accusation of the commission of a crime is defamatory per se, meaning that special harm need not be proved. Wilkerson v Carlo, 101 Mich App 629, 632; 300 NW2d 658 (1980). Cf. 1994 Det Col L R 61, 76-77, 100-112, and cases cited therein (while the doctrine of libel per se has some tangential relevance to the issue of defamatory meaning, in a strict sense it is most relevant to the requirements governing the pleading of damages).
Where a defendant’s statements are not protected by the First Amendment, a plaintiff can establish a defamation claim by showing (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the *9 publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). Hawkins, supra, p 325; Ireland, supra, p 614. Whére a public figure is involved in a defamation case, the public figure must prove by clear and convincing evidence that the publication was a defamatory falsehood and was made with actual malice, i.e:, with knowledge of falsity or with reckless disregard for the truth. Hawkins, supra, p 331, n 10, citing Masson v New Yorker Magazine, Inc, 501 US 496; 111 S Ct 2419; 115 L Ed 2d 447 (1991); Garvelink, supra, p 608, citing New York Times v Sullivan, 376 US 254, 279-280; 84 S Ct 710; 11 L Ed 2d 686 (1964). A court may determine, as a matter of law, whether a statement is actually capable of defamatory meaning. Ireland, supra, p 619. Where no such meaning is possible, summary disposition is appropriate. Id.
Further subtleties and refinements to the basic elements stated above have arisen as the “[t]wo competing legal regimes [of libel and constitutional law] collide . . . .” Locricchio v Evening News Ass’n, 438 Mich 84, 88; 476 NW2d 112 (1991), cert den 503 US 907; 112 S Ct 1267; 117 L Ed 2d 495 (1992). In Hawkins, supra, p 325, this Court noted that the public or private character of the speech must be considered. Regarding that, the Court in Locricchio stated that the United States Supreme Court “has most consistently interpreted the First Amendment to accord maximum protection to, public speech about public figures . . . [with a] special solicitude for speech of public concern.” Id., pp 118, 120 (citations omitted).
*10 In Hawkins, supra, pp 332-333, this Court discussed the “substantial truth doctrine,” which states that a statement or defamatory implication need only be substantially accurate as opposed to being literally and absolutely accurate. See also Rouch v Enquirer & News of Battle Creek (After Remand), 440 Mich 238, 264; 487 NW2d 205 (1992), cert den 507 US 967; 113 S Ct 1401; 122 L Ed 2d 774, reh den 507 US 1047; 113 S Ct 1891; 123 L Ed 2d 507 (1993) (numerous courts have rejected claims of falsity when based on a misuse of formal legal terminology by nonlawyers). In Hawkins, supra, p 334, this Court reiterated that the issues of falsity and fault were to be examined independently, so that whether the statement was made negligently or intentionally was independent of the question of material falsity, to which the substantial truth doctrine is applicable. Hawkins, supra, involved a suit for defamation by implication. This Court determined that such a cause of action exists in Michigan but only if the plaintiff proves that the defamatory implications are materially false. Id., p 332.
In this case, we strongly emphasize that our conclusions are limited strictly to the facts of this case. See State Farm Mut Automobile Ins Co v Ruuska, 412 Mich 321, 338; 314 NW2d 184 (1982); Haukland v Muirhead, 233 Mich 390, 397, 399; 206 NW 549 (1925); Monusko v Postle, 175 Mich App 269, 277; 437 NW2d 367 (1989). Second, while we are aware of plaintiffs recent convictions of second-degree murder and delivering a controlled substance without a medical license, those convictions dp not affect our instant review of the trial court’s 1997 decision to deny defendants’ motions for summary disposition in plain *11 tiff’s defamation action. Finally, we note without comment that defendant ama’s letter to the Attorney General, in addition to containing the allegedly defamatory statements, also states, “it is ethical for physicians to provide effective pain medication even if the medication may have the side effect of suppressing respiration and hastening death.” (Emphasis added.)
In this case, there is no dispute that plaintiff is a public figure. Indeed, more than most in recent memory, plaintiff “voluntarily expose [d] [himself] to the risk of defamation by injecting [himself] into public controversy.” Locricchio, supra, p 119. Additionally, the parties do not dispute that the issue of assisted suicide is a matter of public concern. Therefore, we must accord maximum protection to defendants’ speech about plaintiff, with “special solicitude” for their speech on a matter of such urgent public concern. Locricchio, supra.
However, even without that maximum protection and special solicitude, we hold as a matter of law that the alleged defamatory statements, taken individually or together, taken in or out of context, do not, by implication or otherwise, considering all the circumstances, so harm plaintiff’s reputation as to lower that reputation in the community or to deter third persons from associating with him. Ireland, supra, p 619. We find that, with respect to the issue of assisted suicide, plaintiff is virtually “libel proof,” which has been defined as “a rather loose-woven legal conception of the federal courts.” Brooks v American Broadcasting Co Inc, 932 F2d 495, 500 (CA 6, 1991). In Brooks, the Court quoted from an opinion of the Second Circuit Court of Appeals to further define the concept as fol *12 lows: “ ‘[I]n those instances where an allegedly libelous statement cannot realistically cause impairment of reputation because the person’s reputation is already so low . . . the claim should be dismissed so that the costs of defending against the claim of libel, which can themselves impair vigorous freedom of expression, will be avoided.’ ” Id., p 501, quoting from Guccione v Hustler Magazine, Inc, 800 F2d 298, 303 (CA 2, 1986), cert den 479 US 1091; 107 S Ct 1303; 94 L Ed 2d 158 (1987). In Brooks, the Court noted that, while criminal convictions are the well-worn path to achieving libel-proof status, a specific reputation obtained through means such as newspapers and magazines also will suffice. Id. See also Mattheis v Hoyt, 136 F Supp 119 (WD Mich, 1955) (even a partially untrue statement, published after a conviction of murder, did not damage the plaintiff’s reputation except possibly among other inmates); Noth v Evening News Ass’n, 338 Mich 359, 362; 61 NW2d 1 (1953) (the plaintiff’s admission amply justified the defendant’s stating that the plaintiff was guilty of murder though convicted only of manslaughter). In short, plaintiff’s reputation in the community, if not the nation, is such that the effect of more people calling him either a murderer or a saint is de minimis. Brooks, supra, p 501. Further, we conclude that any effect of defendants’ statements, not unlike all the other publicity that generally “spells plaintiff’s name right,” would be just as likely to result in third persons seeking plaintiff out rather than deterring them from associating with plaintiff. Ireland, supra.
In light of our conclusion that the implication that plaintiff is a murderer, which arises from the statements forming the basis of plaintiff’s complaint, is not *13 defamatory, plaintiffs other arguments are moot. Notwithstanding plaintiffs creativity at oral argument, we decline plaintiffs invitation to hold as a matter of law that all accusations of criminal activity are automatically defamatoiy (thereby eliminating the need for that determination by the trial court in the first instance), and we find no merit in plaintiffs related claim that a finding in favor of defendants would in essence preclude criminal prosecution under MCL 750.370; MSA 28.602.
Even if we were to conclude that defendants’ statements are defamatory, state objectively verifiable facts about plaintiff, and are provable as false, we would find that with respect to this highly public plaintiff and the facts of this case, which are nothing if not matters of public concern, because the statements also are necessarily subjective and could also be reasonably understood as not stating actual facts, they are either nonactionable rhetorical hyperbole or must be accorded the special solicitude reserved for protected opinion. Locricchio, supra.
Plaintiff’s very celebrity (or notoriety, if you will) derives exclusively from his participation in a national debate over the propriety of assisted suicide—whether it is more akin to an act of mercy or to an act of homicide. Having exercised his leadership on behalf of one side of this debate, and having contributed substantially to the awareness of the American people of this debate, it is now more than a little disingenuous for plaintiff to accuse those on the opposite side of this debate of defamation. Such alleged defamation is grounded here in nothing more than the fact that defendants are in disagreement with plaintiff’s position: they would characterize *14 plaintiff’s conduct differently than plaintiff would characterize it. Where an alleged defamatory statement, occurring in the course of a public debate initiated or perpetuated by plaintiff himself, is focused precisely on a matter lying at the heart of the debate, it is hard to understand how tort law could be implicated. Indeed, it is hard to imagine anything that could more effectively chill legitimate public debate.
Reversed and remanded for entry of judgment for defendants. We do not retain jurisdiction.
Markman, P.J., concurred.