STATE OF MICHIGAN
COURT OF APPEALS

DONALD ANDREWS,

        Plaintiff-Appellant,

v

FIXEL LAW OFFICES, PLLC, and JULIE
MCDONALD,

        Defendants-Appellees.

UNPUBLISHED
April 16, 2015

No. 319326
Ingham Circuit Court
LC No. 12-001222-CZ

DONALD ANDREWS,

        Plaintiff-Appellant,

v

FIXEL LAW OFFICES, PLLC, and JULIE
MCDONALD,

        Defendants-Appellees.

No. 320394
Ingham Circuit Court
LC No. 12-001222-CZ

Before: OWENS, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

This case arises out of plaintiff's allegations that defendants—a law firm he clerked for while in law school and an attorney involved with that firm—defamed him and committed legal malpractice. The trial court's dismissal of both of these claims underlies plaintiff's appeal in Docket No. 319326. Its imposition of fees and costs underlies his appeal in Docket No. 320394. Both appeals are by right and in both cases we affirm.

## I. BACKGROUND

The specific acts triggering this lawsuit occurred in the fall of 2011, although the background events underlying them stretch back nearly ten years. In the early 2000s, plaintiff sustained several misdemeanor convictions in Virginia, which included failing to stop at the scene of an accident, hit and run, unauthorized use of a motor vehicle, and an offense called "nuisance animal." As a result of these convictions, in 2004 plaintiff was discharged from the

United States Navy under less than honorable conditions. By 2008, plaintiff faced another misdemeanor charge, this time for failure to comply with housing regulations. That same year, he was found guilty of improperly displaying tags on a vehicle. Plaintiff's legal problems climaxed in 2010 when he served 45 days in jail for civil contempt of court resulting from his failure to pay child support. Although he later sued the Virginia state court judge who imposed that penalty for personally violating his civil rights, the federal district court in Virginia dismissed his lawsuit. *Andrews v Paxson*, unpublished opinion of the United States District Court for the Eastern District of Virginia, issued February 16, 2012 (Docket No. 3:11-CV-518). His appeals to the Fourth Circuit and United States Supreme Court were unsuccessful. See *Andrews v Paxson*, 478 Fed Appx 781 (CA 4, 2012); *Andrews v Paxson*, ___ US ___; 133 S Ct 1270; 185 L Ed 2d 209 (2013).

In the midst of these events, plaintiff applied to and was accepted by the Thomas M. Cooley Law School ("Cooley") in the fall of 2009. As part of the application process, Cooley required applicants to disclose any misdemeanor convictions or other similar legal issues. Plaintiff did not disclose any of his convictions, his less than honorable discharge, or his child custody battle until well into his law school career, when he sent an email to Cooley's dean on June 17, 2011. Cooley responded by placing plaintiff on administrative probation and initiating an investigation into these late disclosures.

Three months later, plaintiff was hired as a law clerk for defendant Fixel Law Offices, PLLC (the "law firm") by the firm's owner, Joni Fixel ("Fixel"). His pay was $10 an hour. Plaintiff testified that during his employment, he occasionally discussed personal matters with Fixel, including his custody dispute in which he was representing himself. Plaintiff claimed that Fixel would offer advice about his "filing motions or whatever," even going so far as to review several of them. Apparently, her only suggested change to a document was to describe the settlement amount as based "upon reasonable belief." Defendant Julie McDonald, who formerly had an "of counsel" relationship with the law firm, also spoke to plaintiff about his custody dispute, encouraging him to disclose to the Virginia court that he was in law school. Plaintiff admitted that he never had a written contract with defendants for legal services, nor did he ever make any appointment with defendants regarding legal matters, let alone receive or pay any bills or retainers.

By November 2011, Fixel and McDonald developed concerns about plaintiff's fitness to practice law, and plaintiff was terminated. On November 10, 2011, following a phone call to Cooley, McDonald wrote a letter to the dean of Cooley voicing her concerns. In it, McDonald accused plaintiff of being a "male chauvinist," detailing several examples of his alleged sexist behavior. She elaborated the details of his custody dispute, including that he had "bragged" both about hiding income to avoid child support payments and about failing to disclose his residence in Michigan to the Virginia court or his ex-wife. Plaintiff also allegedly declined to disclose his prior convictions to Cooley "so he could get into school, deal with it later after the school had time 'invested' in him, and still graduate." Perhaps most objectionable to plaintiff was McDonalds' assertion, "I honestly believe that he has sociopathic and/or delusional tendencies."

In response, Cooley launched a formal disciplinary investigation in November 2011. Ultimately, Cooley dismissed that investigation in June 2012 since McDonald's letter was founded primarily on hearsay. However, two months later, Cooley launched a formal disciplinary investigation regarding plaintiff's late disclosures. This investigation—which was

apparently separate from the investigation immediately ensuing his late disclosures—lasted from August 2012 to December 2012 and resulted in plaintiff's graduation being delayed until January 2013.

## II. PROCEEDINGS

In the meantime, on November 13, 2012, plaintiff filed a two-count complaint against defendants, alleging defamation (Count I) and legal malpractice (Count II). The former consisted of McDonald's statement that "I honestly believe that he [plaintiff] has sociopathic and/or delusional tendencies."[1] The latter consisted of defendants' alleged disclosures of plaintiff's confidential information. The Complaint alleged that defendants' review of plaintiff's filings in the Virginia court and defendants' instruction that plaintiff should "tell the Virginia court the truth" established the attorney-client relationship underlying the accusations in Count II. Defendants answered and following discovery moved for summary disposition under MCR 2.116(C)(10).

Regarding defamation, defendants asserted that the statement was not actionable because (1) it was true based on plaintiffs' prior criminal history, incarcerations, and extensive civil litigation; (2) it was McDonald's honest opinion, which was not provable as false, and (3) the statement was otherwise rhetorical hyperbole, which colorfully described plaintiff. Defendants also added that the law firm was not liable since Fixel had nothing to do with the letter. Defendants likewise contested the malpractice claim, since there was no attorney-client relationship and plaintiff otherwise provided no expert. Plus, defendants maintained, McDonald had a duty to disclose plaintiff's lack of fitness to practice law.

Plaintiff responded that McDonald had used specific medical terminology and that the court as fact-finder must determine its veracity. Moreover, plaintiff argued that the statement was not hyperbolic because, in context, McDonald's letter accused plaintiff of many wrongdoings. Plaintiff maintained that the law firm was also liable because Fixel and McDonald discussed the contents of the letter, which was written on firm letterhead. Regarding the attorney-client relationship, plaintiff argued that the legal advice he received was part of his compensation package with the firm in the form of a quasi-contract, or alternatively, that he was a potential client of the firm and entitled to privileged communication.

A motion hearing ensued after which the trial court issued an opinion and order granting defendants' motion. Regarding defamation, the court held that McDonald provided only an opinion, neither provable as false nor capable of being reasonably interpreted as actual fact. As the court explained:

> Here, McDonald stated that she believes that Plaintiff has sociopathic and/or delusional *tendencies*. Consequently, McDonald does not state that Plaintiff has a diagnosable medical condition, but a subjective opinion that Plaintiff's statements concerning his disclosures to Cooley and unwillingness to disclose facts of ethical

---

[1] Count I alleged that McDonald's entire letter was defamatory; however, the trial court dismissed all portions of Count I except the statement cited above.

concern tend to resemble characteristics of a medical condition. This is not definitively provable as false and cannot reasonably be interpreted as stating an actual fact. Therefore, this statement is not actionable as a defamation claim. [Emphasis in original.]

The court likewise rejected plaintiff's claim that he sought legal advice from defendants or that legal advice was offered in exchange for his employment. On this point, the court elaborated:

Plaintiff establishes "one occasion" where he sought legal advice from Fixel to review four pleadings he planned to file in his Virginia custody dispute, but does not show that any confidential information was passed between the two outside of reviewing the documents and Plaintiff testified that this was "probably the last time" he discussed legal matters with Fixel. Thus, Plaintiff cannot establish any negligence or proximate cause stemming from Fixel reviewing Plaintiff's pleadings. In result, Plaintiff's legal malpractice claim fails as a matter of law. [Citation omitted.]

Accordingly, plaintiffs' claims were dismissed and he appealed that decision. In the meantime, defendants moved for fees and costs under MCR 2.405. Plaintiff moved for a stay, but the trial court proceeded to award fees and costs anyway, noting only that plaintiff had failed to file a notice of hearing on his motion. Plaintiff then appealed the order imposing fees and costs, which totaled $34,474, and moved this Court for a stay. Having denied that request,[2] we now turn to the substance of plaintiff's appeal.

III. DOCKET NO. 319326

Plaintiff's claims in Docket No. 319326 are essentially a recapitulation of his arguments opposing summary disposition below. The trial court dismissed both of his claims under MCR 2.116(C)(10), hence our review is de novo. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). "A motion for summary disposition pursuant to MCR 2.116(C)(10) should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Curry v Meijer, Inc*, 286 Mich App 586, 590; 780 NW2d 603 (2009) (citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In reviewing this issue, we consider all of the pleadings, affidavits, depositions, admissions and other documentary evidence. *Corely v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). "Where the burden of proof rests with the nonmoving party, that party must respond with documentary evidence to demonstrate the existence of a genuine issue of material fact for trial." *Curry*, 286 Mich App at 591 (citation omitted). The nonmoving party's failure to respond with such evidence results in judgment for the moving party. *Id*. at 591 (citation omitted).

---

[2] *Andrews v Fixel Law Offices, PLLC*, unpublished order of the Court of Appeals, entered June 11, 2014 (Docket No. 320394).

For the reasons stated below, we find no error in the dismissal of both of plaintiff's claims.

## A. DEFAMATION

In challenging the dismissal of his defamation claim, plaintiff claims the trial court erred in holding both that McDonald's statement did not state a medical condition and that her statement was not provable as false. "The elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (slander per se) or the existence of special harm caused by publication." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005) (citations omitted). To be actionable, a statement must be provable as false and state actual facts about the plaintiff. *Kevorkian v American Medical Ass'n*, 237 Mich App 1, 5-6; 602 NW2d 233 (1999); *Ireland v Edwards*, 230 Mich App 607, 616-617; 584 NW2d 632 (1998). Thus, if the statement "could not reasonably interpreted as stating actual facts about the plaintiff," the statement is not actionable. *Kevorkian*, 237 Mich App at 6. "Rhetorical hyperbole" or "vigorous epithet" is not sufficient, *id.*, even if such language would be "highly offensive to the person criticized," *Ghanam v Does*, 303 Mich App 522, 546; 845 NW2d 128 (2014).

As they did below, the parties argue at length about whether McDonald's statement was provable as false or stated actual facts. To this point, the trial court was right to focus on the word, "tendencies." A tendency is "an inclination, bent, or predisposition to something." *Random House College Dictionary* (rev ed, 1988). Thus, in accusing defendant of having "sociopathic and/or delusional tendencies," McDonald was expressing her opinion that plaintiff was inclined to behave in sociopathic or delusional ways. This can hardly be interpreted as a medical diagnosis as plaintiff argues.

Further, accusing someone of having "tendencies" in this context is hardly provable as false. In this respect, our case is akin to *Ghanam* in which the plaintiff alleged defamation when he was accused of, among other things, "probably" being a thief. *Ghanam*, 303 Mich App at 548. As this Court explained, "the use of the word 'probably' makes the purported asserted fact hardly provable." *Id*. Considering that "probably" means "likely to occur or prove true," *Random House College Dictionary* (rev ed, 1988), the non-actionable accusation in *Ghanam* was even stronger than the one here.

And while this conduct, if true, is certainly rude and untruthful, it does not show plaintiff is sociopathic or delusional, let alone that he has those tendencies.[3] To the contrary, his conduct as to Cooley reveals a cunning and manipulative *modus operandi* without regard for social decorum. There is nothing psychopathic or delusional about plaintiff allegedly wanting to avoid unfavorable consequences that could result from honest disclosures (e.g., plaintiff allegedly

---

[3] Sociopath is defined as "a person, as a psychopathic personality, whose behavior is antisocial or sexually deviant." *Random House College Dictionary* (rev ed, 1988). Delusion is defined in part as "a fixed, dominating, or persistent false mental conception resistant to reason." *Id*.

-5-

avoided disclosing his convictions to Cooley "so he could get into school"), as it instead reveals that plaintiff was very much in touch with reality. In context, then, McDonald's conclusion that plaintiff had "sociopathic and/or delusional tendencies"—although undoubtedly insulting to plaintiff—is a *non sequitur* in the context of McDonald's letter. For this reason, "[a]reasonable reader would not take the statement literally."[4] *Ghanam*, 303 Mich App at 548. It is not actionable, and we may affirm on this alternate ground as well. See *Detroit International Bridge Co v Commodities Export Co*, 279 Mich App 662, 668; 760 NW2d 565 (2008) ("we will not reverse a trial court if it reached the right result for an alternate reason.").[5]

## B. LEGAL MALPRACTICE

Plaintiff next asserts the trial court erred in dismissing his malpractice claim. To establish legal malpractice, a plaintiff must show: "(1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the plaintiff, (3) that the negligence was the proximate cause of an injury, and (4) the fact and the extent of the injury alleged." *Kloian v Schwartz*, 272 Mich App 232, 240; 725 NW2d 671 (2006) (citation omitted).

In dismissing plaintiff's claim, the trial court ruled that no attorney-client relationship existed. Defendants argue at length that we should affirm this ruling since the parties had no formal contract. But the attorney-client relationship is not established by a formal contract. *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Schs*, 455 Mich 1, 11; 564 NW2d 457 (1997). Rather, the relationship is established "when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession." *Id*., citing 7 Am Jur 2d, Attorneys at Law, § 118, pp 187-188.

Plaintiff seizes on this, arguing that an attorney-client relationship was implied. He bases this on (1) Fixel's "personal" questioning into his custody dispute, (2) Fixel's review of certain filings in that dispute, (3) Fixel's suggestions regarding discovery against his ex-wife, (4) and McDonald's suggestion that he disclose to the Virginia court that he was a law student.

Most of this is too general to be considered legal advice. Indeed, regarding the personal questioning, plaintiff simply recited Fixel's generic questions asking him "have you tried this and could you do this?" Fixel's review of plaintiff's filings offers nothing more, considering she only told him, "They look good," before offering a stylistic suggestion. No one could reasonably construe such interaction—without more detail—as involving legal advice.

---

[4] In view of this, defendants' assertion of truth as a defense is not helpful. Similarly, plaintiff's claim that he has not been diagnosed with any mental disorders makes no difference in this context.

[5] Additionally, the law firm is not otherwise liable where plaintiff did not rebut defendants' evidence that McDonald's letter was *not* sent while in the discharge of her duties. See *Linebaugh v Sheraton Michigan Corp*, 198 Mich App 335, 341; 497 NW2d 585 (1993) (dismissing defamation against a corporate defendant because the defamatory cartoon was not drawn in the discharge of the agent's duties or done in relation to a matter about which the agent's duties required him to act).

This leaves us with the only specific "advice" plaintiff has cited, namely: Fixel's suggestion that in his discovery dispute with his ex-wife, he should "pull forward that she's got all this money and is simply taking you to court all the time to harass you," and McDonald's urging him to "tell the Virginia court the truth." As for the former, Fixel's statement appears more like supportive encouragement from a friend who has spent hours in the car with plaintiff listening to "personal things" than formal advice from an attorney. Similarly, merely telling someone to be truthful is hardly the legal advice unique to the attorney-client relationship.

It bears further emphasis that the parties' interaction is a far cry from *Macomb Co Taxpayers* on which plaintiff relies to show an implied attorney-client relationship. In that case, the Court found an implied attorney-client relationship where the individuals at issue were not only involved in specific litigation, but they had also acted unambiguously upon the legal advice of attorneys representing the organizations involved in that same litigation. *Macomb Co Taxpayers Ass'n*, 455 Mich at 11. None of those circumstances is present here, however. Rather, plaintiff obtained "legal advice"—more correctly denoted as simply "advice"—while doing legal work as a law student for attorneys. The very nature of this job involves his learning the legal system. His dealings with defendants in this context are far too attenuated to establish the speculative attorney-client relationship he now claims.

Even if an attorney-client relationship existed, however, plaintiff does not explain how defendants breached his confidence. Instead, he offers only the conclusory assertion that McDonald's letter "reveal[ed] matters of privilege." This is not enough to oppose summary disposition. *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 470; 646 NW2d 455 (2002). Regardless, to the extent the letter referenced information available in the public record (such as his custody dispute and prior convictions), this argument would not help plaintiff establish a breach. See *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 619-620; 576 NW2d 709 (1998) ("the attorney-client privilege is limited to *communications* between employee and counsel, not facts" (emphasis in original)). Plaintiff's claim that defendants violated MRPC 1.6 (regarding confidentiality) fares no better, especially where plaintiff otherwise presented no expert testimony as is generally required to sustain a legal malpractice claim. See *Beattie v Firnschild*, 152 Mich App 785, 792-793; 394 NW2d 107 (1986) (violation of the rules of professional conduct are not negligence per se and do not relieve a plaintiff of the general obligation to present expert testimony to establish legal malpractice).[6] There is simply no legal malpractice in this case.

IV. DOCKET NO. 320394

---

[6] Although the Michigan Rules of Professional Conduct did not expressly impose a duty on McDonald to reveal the information contained in the letter, McDonald's belief that she had a duty to disclose was not unfounded. See MRPC 5.3(b) (requiring supervisory lawyers to ensure that the conduct of their nonlawyer assistants is compatible with a lawyer's professional obligations). On this score, MRPC 3.3 requires candor to a tribunal, and plaintiff's refusal to disclose his residence and education to the Virginia court is undisputed.

This brings us to the trial court's award of fees and costs against plaintiff under MCR 2.405, as well as the court's denial of plaintiff's motion to stay the proceedings. We conclude plaintiff's challenges here are meritless as well.

## A. FEES AND COSTS

The offer of judgment rule, MCR 2.405, allows a party to submit to an adverse party a written offer to stipulate to the entry of a judgment in a sum certain. If the offer is rejected and the adjusted verdict is more favorable to the offeree (here, defendants) than the average of the offer and counteroffer, the offeror (here, plaintiff) must pay the offeree's actual costs. *JC Bldg Corp II v Parkhurst Homes, Inc*, 217 Mich App 421, 426; 552 NW2d 466 (1996), citing MCR 2.405(D). The adjusted verdict includes the verdict plus interest and costs from the date the complaint was filed through the date of the offer. MCR 2.405(A)(5). "This Court reviews a trial court's decision to award sanctions under MCR 2.405 for an abuse of discretion." *JC Bldg*, 217 Mich App at 426.[7]

Here, plaintiff filed an offer of judgment in accordance with MCR 2.405(D) for $45,000. Defendants' counteroffer of $1,500 made the average offer $23,250. See MCR 2.405(A)(3). Accordingly, because plaintiff ultimately received no award, defendants requested and received costs and fees totaling $34,474. Plaintiff's only challenge below—which he also raises on appeal—was that the court's ruling was premature since his appeal was pending at the time. But "[u]nder MCR 7.208(I), a trial court has jurisdiction to award sanctions [under MCR 2.405] despite the filing of a claim to appeal unless the Court of Appeals orders otherwise." *Edge v Edge*, 299 Mich App 121, 137; 829 NW2d 276 (2012). We did not order otherwise in this case, and the trial court was right to reject plaintiff's argument.

Besides this, plaintiff also argues for the first time on appeal that the award was improper because defendants' counteroffer was insincere. See MCR 2.405(D)(3) (permitting the trial court to refuse to award attorney fees in the interests of justice); see also *Luidens v 63rd Dist Court*, 219 Mich App 24, 35; 555 NW2d 709 (1996) (an award of attorney fees may be inappropriate where an offer is *de minimis* and made for "gamesmanship purposes rather than a sincere effort at negotiation."). However, we are hard-pressed to question defendants' sincerity where not only was plaintiff the first to invoke MCR 2.405, but also where his claims are totally meritless. Considering that plaintiff waited to raise this argument until his appeal, he is in no position now to accuse defendants of gamesmanship.

## B. MOTION TO STAY

Finally, plaintiff claims the trial court erred in failing to stay the proceedings during the pendency of this appeal. However, this Court also declined to stay the proceedings, and, more importantly, plaintiff's claims are otherwise meritless for the reasons already explained. His request is therefore moot. *Attorney General v Pub Serv Comm*, 269 Mich App 473, 485; 713

---

[7] Plaintiff incorrectly recites the standard of review applicable to summary disposition as applicable here.

NW2d 290 (2005) ("An issue is moot if an event has occurred that renders it impossible for the court to grant relief.").

Affirmed.

Defendants may tax costs, having prevailed in full. MCR 7.219(A).


/s/ Donald S. Owens
/s/ Kathleen Jansen
/s/ Christopher M. Murray