# STATE OF MICHIGAN

# COURT OF APPEALS

ODELL JONES III,

        Plaintiff-Appellant,

v

CURTIS JENNINGS and GREGORY WHITE,

        Defendants-Appellees,

and

PATRICIA MCKANNA,

        Defendant.

UNPUBLISHED
August 30, 2016

No. 326610
Wayne Circuit Court
LC No. 13-005247-CZ

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Plaintiff, Odell Jones III, appeals as of right in this action for defamation, invasion of privacy, and intentional infliction of emotional distress. Plaintiff challenges both a January 2015 order that granted summary disposition in favor of defendant Curtis Jennings and a March 2015 order granting summary disposition in favor of defendant Gregory White.[1] Because plaintiff has failed to establish a material question of fact supporting his claims, we affirm.

This case arises out of a disagreement between residents of a housing cooperative related to an elevator renovation project in their condominium. Plaintiff was involved in the renovation planning process. In April 2013, he filed a complaint alleging that defendants had made false statements about him to other shareholders in the 1300 Lafayette East Cooperative in Detroit, where he was a member of the board of directors and defendants were shareholders. Plaintiff alleged that in October 2012, defendants stated in the presence of at least six shareholders that he had taken "kick-backs from [an] elevator contract," "bribes from the elevator contractor," had failed to solicit "competitive bids by rigging the bid process," and had willfully squandered "the

---

[1] Plaintiff filed this appeal from a March 2015 stipulated order dismissing defendant Patricia McKanna, who is not a party to this appeal.

-1-

shareholders [sic] assets [by] unnecessarily hiring an architect to prepare documents for renovation of the elevators and expending five times ($2,247,000.00) the amount necessary for the project." Plaintiff alleged that in January 2013, defendants continued to transmit in writing "the same false and defamatory . . . statements about" him, and that in April 2013, in the presence of another shareholder, defendants orally reiterated the same false allegations. Count I alleged that defendants had committed defamation per se, Count II asserted a claim for false-light invasion of privacy, and Count III alleged that defendants had intentionally inflicted emotional distress.

In October 2014, Jennings and White filed separate motions for summary disposition, each contending that plaintiff had failed to produce any evidence that they had made any false or otherwise defamatory statements about him. In January 2015, the circuit court granted Jennings's motion, explaining, in relevant part:

> [The other board members deposed by the parties] didn't know who disseminated the information. It is clear that there were several members of the cond[o]minium and or the cond[o]minium board who were unhappy about the expensive, . . . cost, but we're talking about approximately $3 million, who were upset about that and expressed some concern.

> There is someone . . . who may have disseminated defamatory information. If [plaintiff] was not in bankruptcy, if he was the subject of criminal proceeding, but we don't know as we stand here today who those statements that are either outright lies or inaccuracies, [are] attributable to. That is the big problem.

> * * *

> And then you have the problem of common interest. These are people who are all interested in one way or another in the cond[o]minium project. They're on the board and I presume that all the people on the board were also owners of cond[o]minium units within the building and they expressed some concern about the dollars, the amount the project would cost and whether or not one person should be in charge.

In March 2015, the circuit court granted White's motion for summary disposition, again concluding that plaintiff had failed to present any evidence attributing defamatory comments to White. The circuit court reasoned that, although plaintiff had presented "circumstantial evidence that he was defamed," the record contained no "circumstantial evidence or direct evidence pointing to the person or persons who did it."

Plaintiff asserts that the circuit court improperly granted defendants summary disposition on his claims for defamation and false-light invasion of privacy.[2] We review de novo a circuit court's summary disposition ruling. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Defendants moved for summary disposition pursuant to MCR 2.116(C)(8) and (10).[3] The circuit court did not specify pursuant to which subrule of MCR 2.116(C) it granted the motions. But because the parties referenced evidence beyond the pleadings, which the circuit court considered, we review the summary disposition ruling pursuant to MCR 2.116(C)(10). *Quinto v Cross & Peters, Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

A motion brought under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh*, 263 Mich App at 621. "[T]his Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Id*. A circuit court may properly grant summary disposition pursuant to MCR 2.116(C)(10) if no genuine issue exists "regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. If the moving party satisfies the burden of presenting "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion," MCR 2.116(G)(3), the burden returns to the nonmoving party to introduce "documentary evidence establishing the existence of a material fact, and the motion is properly granted if this burden is not satisfied," *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005).

Our review of the record fails to disclose any evidence reasonably tending to establish that Jennings or White made any false or defamatory statements. To establish a viable defamation or libel claim, a plaintiff must prove:

> (1) [A] false or defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod). [*Mino v Clio Sch Dist*, 255 Mich App 60, 72; 661 NW2d 586 (2003).]

See also *Hawkins v Mercy Health Servs, Inc*, 230 Mich App 315, 325; 583 NW2d 725 (1998) (outlining the same elements for a libel claim). Pursuant to MCL 600.2911(7), a private-figure

---

[2] Plaintiff does not challenge the circuit court's dismissal of his claim for intentional infliction of emotional distress.

[3] Defendant White filed a motion seeking summary disposition pursuant to MCR 2.116(C)(10) only.

plaintiff must establish that the defendant negligently published an allegedly defamatory falsehood.[4]

With respect to the first element, a statement qualifies as actionable if it is a "false statement[] of fact, i.e., [a statement] that state[s] actual facts but [is] objectively provable as false . . . . *Kevorkian v American Med Ass'n*, 237 Mich App 1, 8; 602 NW2d 233 (1999). A communication qualifies as defamatory "if, under all of the circumstances, it tends to so harm the reputation of an individual that it lowers the individual's reputation in the community or it deters others from association or dealing with the individual." *Mino*, 255 Mich App at 72 (quotation marks and citation omitted). In *Kevorkian*, this Court stated:

> The Supreme Court has also determined that defamatory statements, in order to be actionable, must state actual facts about a plaintiff, thereby protecting statements that, although factual on their face and provable as false, could not reasonably be interpreted as stating actual facts about the plaintiff. . . .
>
> The Supreme Court has further recognized that statements must be viewed in context to determine whether they are capable of defamatory interpretation, or whether they constitute no more than "rhetorical hyperbole" or "vigorous epithet." Thus, some expressions of opinion are protected. . . .
>
> . . . Language that accuses or strongly implies that someone is involved in illegal conduct crosses the line dividing strongly worded opinion from an accusation of a crime. [*Kevorkian*, 237 Mich App at 6-8 (quotation marks and citation omitted).]

Because plaintiff theorizes that defendants defamed him by implication, we summarize the necessary requirements of defamation by implication as stated in *Hawkins*, 230 Mich App at 329-331:

> Michigan common law recognizes defamation by implication albeit in a somewhat circumscribed fashion. . . .
>
> . . . (1) [A] cause of action for defamation by implication exists in Michigan, but only if the plaintiff proves that the defamatory *implications* are materially false, and (2) that such a cause of action might succeed even without a direct showing of any actual literally false *statements*. . . .
>
> It remains true, however, that claims of defamation by implication, which by nature present ambiguous evidence with respect to falsity, face a severe constitutional hurdle. Principles of general libel and First Amendment libel law continue to apply. Further, Michigan libel law prohibits libel liability for *true speech* on matters of public concern. [quotation marks and citations omitted.]

---

[4] The parties agree that plaintiff constituted a private figure.

Over the course of two depositions, plaintiff repeatedly denied having personal knowledge of any arguably false or defamatory statements made by Jennings or White regarding plaintiff, including those referenced in the complaint. The former members of the board of directors similarly could not recall defendants having made any arguably false or defamatory statements concerning plaintiff. The parties agreed that the board of directors had multiple meetings regarding the elevator-replacement project, and that many shareholders had attended the meetings and expressed, orally and in writing, questions about the large scope of the elevator replacement. Multiple members of the board of directors concurred that, because of the substantial shareholder assessment that would help fund the elevator-replacement project, some shareholders understandably had disagreements about the cost.

The only oral statement attributed to defendants at a meeting comprised the following, as testified to by the former president of the board of directors:

> [T]here was discussion about the elevator project at that Finance Committee meeting Mr. White was at. He had some issues with how the bid process had gone, in terms of how [the architectural firm] was hired. And then candidates night, where Greg White and Curtis Jennings and Pat McKanna were all running, they . . . had comments suggesting that there was a problem with the elevator contract, that it wasn't correct, that Odell Jones was responsible, . . . it seems to me Greg White even laughing about . . . how anyone would sign a contract like this, and it wasn't done correctly.

We detect nothing defamatory in these alleged oral statements by defendants. The statements constitute defendants' protected, hyperbolic expressions of opinion regarding whether plaintiff and the board of directors had adhered to bidding practices in contracting for the project, properly prepared a capital plan, or generally understood what they were doing. *Kevorkian*, 237 Mich App at 7. The additional statement by White, questioning "how anyone would sign a contract like this," similarly constitutes a statement of opinion attributable to other contractors to whom White had spoken. *Id*. Furthermore, we detect no oral statements attributable to defendants giving rise to a material question of fact whether defendants defamed him by implication. *Hawkins*, 230 Mich App at 330.

Although plaintiff submitted substantial documentary evidence with his brief in response to defendants' motions for summary disposition, that evidence failed to establish a question of fact regarding whether defendants defamed plaintiff. Ten of the 14 pieces of documentary evidence do not refer to Jennings or White. Of the remaining four pieces of evidence, one consists of a January 9, 2013 letter from the board of directors to all shareholders identifying alterations to the bidding process on large capital projects, and another is a summary of a January 13, 2013 informational meeting for unspecified concerned shareholders "to share information . . . gathered regarding the elevator project," and accurately summarizes the attached documentation pertaining to what the shareholders had learned concerning the elevator-replacement project. A third document is a January 17, 2013 correspondence from Jennings to the board of directors requesting to review elevator-related documents. The fourth document is plaintiff's brief request, dated April 16, 2013, that Jennings, McKanna, and White retract their false "representations that I am receiving kick-backs from contractors involved on the project."

Most of the documents plaintiff produced have no connection to defendants. The January 13, 2013 informational meeting summary references plaintiff, the expense involved in the elevator-replacement project, and the potential for a less expensive alternative. However, the document lacks any false or defamatory statements regarding plaintiff. Rather, it contains appropriate statements of opinion with respect to the feasibility of an alternative elevator-repair plan. Furthermore, we detect no written statements attributable to defendants giving rise to a material question of fact as to whether defendants defamed plaintiff by implication. *Hawkins*, 230 Mich App at 330.

Plaintiff further challenges the circuit court's dismissal of his false-light invasion of privacy claim. In *Duran v Detroit News, Inc,* 200 Mich App 622, 631-632; 504 NW2d 715 (1993), this Court summarized the elements of a false-light invasion of privacy claim as follows:

> In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, *information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position.* [Emphasis added.]

As explained above, plaintiff failed to substantiate a false or defamatory statement by defendants concerning plaintiff. We conclude that plaintiff also failed to establish a question of material fact regarding whether defendants promulgated any "information that was unreasonable and highly objectionable by attributing to [him] characteristics, conduct, or beliefs that were false and placed [him] in a false position." *Id*. at 632.

In light of the foregoing, the trial court did not err in granting defendants' motions for summary disposition.[5]

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

---

[5] Because we conclude that the trial court properly granted summary disposition to defendants based on plaintiff's failure to establish a material question of fact regarding whether defendants defamed plaintiff or cast him in a false light, we need not address plaintiff's other issues raised on appeal pertaining to damages and the shared-interest privilege.