# STATE OF MICHIGAN

# COURT OF APPEALS

---

NANCY J. GARDNER,

        Plaintiff-Appellant,

v

POTESTIVO & ASSOCIATES P.C., FEDERAL
NATIONAL MORTGAGE ASSOCIATION,
QUICKEN LOANS, INC., FLAGSTAR BANK
FSB, and SHERIFF TIM DONNELLON,

        Defendants-Appellees.

UNPUBLISHED
December 20, 2016


No. 328185
St. Clair Circuit Court
LC No. 15-000435-PZ

---

NANCY GARDNER,

        Plaintiff-Appellant,

v

UNITED STATES OF AMERICA, FLAGSTAR
BANK, QUICKEN LOANS, FEDERAL
NATIONAL MORTGAGE ASSOCIATION,
POTESTIVO & ASSOCIATES P.C., ST. CLAIR
COUNTY SHERIFF DEPARTMENT, and
STATE OF MICHIGAN,

        Defendants-Appellees.

No. 329752
St. Clair Circuit Court
LC No. 15-001505-CH

---

Agent Nancy on behalf of NANCY J. GARDNER
and Agent Don on behalf of DONALD M.
GARDNER,

        Plaintiffs-Appellants,

v

CHIEF EXECUTIVE OFFICER FOR THE
UNITED STATES and CHIEF EXECUTIVE

No. 330964
St. Clair Circuit Court
LC No. 15-002607-CZ

OFFICER FOR THE FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

            Defendants-Appellees.

---

Before:  SERVITTO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

In Docket No. 328185, plaintiff, Nancy Gardner, appeals as of right an order entered by St. Clair Circuit Court Judge Daniel J. Kelly, granting summary disposition of plaintiff's declaratory judgment action in favor of defendants, Potestivo & Associates P.C., Federal National Mortgage Association ("Fannie Mae"), Quicken Loans, Inc. ("Quicken"), Flagstar Bank, FSB, and Sheriff Tim Donnellon, and discharging and releasing a claim of lien executed by plaintiff against real property located at 7221 State Road, Burtchville, Michigan.

In Docket No. 329752, plaintiff appeals as of right an order entered by St. Clair Circuit Court Judge Michael L. West, granting summary disposition of plaintiff's foreclosure action in favor of defendants, the United States of America, Flagstar Bank, Quicken, Fannie Mae, Potestivo & Associates, P.C., the St. Clair County Sheriff's Department, and the State of Michigan.

In Docket No. 330964, plaintiffs, "Agent Nancy on behalf of Nancy J. Gardner" and "Agent Don on behalf of Donald M. Gardner," appeal as of right another order entered by Judge Kelly dismissing a quitclaim deed action filed against defendants, the Chief Executive Officer for the United States of America and the Chief Executive Officer for Fannie Mae.  The court dismissed the action because "Agent Nancy" and "Agent Don" are not legally recognized entities and neither had the capacity to bring an action before the court.

We affirm in all three appeals.

## I.  BACKGROUND FACTS

The current cases represent three of many legal actions, brought in both state and federal court, related to the real property located at 7221 State Road, Burtchville, Michigan ("the property").  The Sixth Circuit Court of Appeals summarized the historical facts leading up to the instant cases as follows:

> On May 18, 2007, Gardner executed a note in the amount of $215,200.00 to obtain a loan from Flagstar to purchase real property commonly known as 7221 State Road, Burtchville, Michigan 48059.  As security for the loan, Gardner executed a mortgage on the property. On May 22, 2007, the mortgage was recorded with the St. Clair County Register of Deeds, in Liber 3723 Page 10. Both the note and mortgage were in favor of Flagstar, as lender, with Mortgage Electronic Registration Systems, Inc. (MERS) acting solely as the nominee for Flagstar and its successors and assigns.  The mortgage provided that MERS is the

mortgagee under the mortgage. On March 4, 2013, the mortgage was assigned from MERS, as nominee for Flagstar and its successors and assigns, to Quicken. The assignment was recorded with the St. Clair County Register of Deeds.

Gardner defaulted on the note for nonpayment. On February 11, 2013, Potestivo, a debt collector acting on behalf of Quicken, served a pre-foreclosure notice on Gardner notifying her that default was made for nonpayment and that the amount due under the note was $207,350.35. On March 6, Gardner responded, requesting a meeting with Potestivo to attempt to work out a modification of the mortgage loan. On March 12, Potestivo replied, informing Gardner that it was the designee for Quicken with regard to her loan pursuant to section 600.3205(a)(1)(c) of the Michigan Compiled Laws. Potestivo advised that to initiate a modification, Gardner would need to complete and return certain financial paperwork along with any supporting documentation within seven days. Potestivo also advised that the ninety-day hold on foreclosure proceedings would expire on May 13, 2013. Gardner responded on March 16. Instead of providing the documentation Potestivo requested, Gardner requested documentation of Potestivo's legal right to negotiate with her and to enter into a modification agreement under the terms of the mortgage. On March 25, Potestivo replied, stating that its response was in connection with Gardner's request that Quicken review the loan for a possible modification and again requesting that Gardner complete and return certain financial paperwork along with supporting documentation within seven days. The letter again advised that the ninety-day hold on foreclosure proceedings would expire on May 13, 2013. On April 8, Potestivo again wrote to Gardner, noting the receipt of her March 16 letter, explaining that it was the designee for Quicken, and advising that it must receive Gardner's documentation by April 12, 2013. On May 23, Potestivo again wrote to Gardner, responding to her request for information about the mortgage loan. Potestivo reiterated that it was the designee for Quicken and informed Gardner that on March 4, 2013, the mortgage was assigned from MERS as nominee for Flagstar to Quicken. Potestivo enclosed copies of the note, mortgage, assignment, and correspondence from its office. The letter also informed Gardner that Quicken was entitled to enforce the mortgage as the mortgagee of record, that the outstanding balance of the loan was $210,270.10, and that a foreclosure sale was scheduled for May 30, 2013. The foreclosure notice was posted on the door of the property and published four times in the Port Huron Times Herald on April 19, April 25, May 3, and May 10, 2013. A sheriff's sale was held on May 30, 2013. Quicken was the highest bidder and received the sheriff's deed to the property. Gardner had six months to redeem the property, and the redemption period expired on November 30, 2013.

A day before the sheriff's sale, on May 29, 2013, Gardner filed a lawsuit in St. Clair County circuit court against Flagstar, Quicken, and Potestivo. Gardner framed her complaint in three counts. Count I sought a declaratory judgment of no debt owed the defendants because they "failed to satisfy their burden of showing they are entitled to enforce the debt." In Count I, Gardner alleged multiple challenges to the foreclosure sale: (1) that the defendants failed to

-3-

comply with Article 3 of the UCC; (2) that they lacked "standing" to foreclose on her mortgage because the defendants failed to endorse the note and were not a holder in due course; (3) that she was entitled to a copy of the original note before Quicken could foreclose; and (4) that Flagstar violated section 6 of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, because it sold the note shortly after it was originated. Count II alleged that the mortgage was an unenforceable contract of adhesion. Count III sought injunctive relief barring the defendants from proceeding with the foreclosure. On June 19, Quicken and Potestivo timely removed the case to federal district court because Gardner alleged that Flagstar violated the REPSA, 12 U.S.C. § 2605. Flagstar consented to the removal. Quicken and Potestivo moved to dismiss pursuant to Rule 12(b)(6). Flagstar concurred in the motion. On August 27, 2013, the district court granted the defendants' motion and dismissed Gardner's case for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Gardner timely appealed. [*Gardner v Quicken Loans, Inc*, unpublished opinion of the Sixth Circuit Court of Appeals, issued June 2, 2014 (Docket No. 13-2257) (citation omitted).]

On June 2, 2014, the Sixth Circuit Court of Appeals affirmed the federal district court's order granting the motion to dismiss. On June 12, 2014, Quicken transferred the property to Fannie Mae by quitclaim deed for "the full consideration of One Dollar ($1.00)."

The instant appeals arise from cases filed in the St. Clair Circuit Court after the Sixth Circuit's decision.

## II. DOCKET NO. 328185

Plaintiff first argues that Judge Kelly erred by granting summary disposition to defendants on the basis of a lack of standing in her declaratory judgment action. We disagree.

"This Court reviews de novo a circuit court's summary disposition ruling." *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). Whether a party has standing to assert a claim also poses a question of law that we review de novo. *Heltzel v Heltzel*, 248 Mich App 1, 28; 638 NW2d 123 (2001). Likewise, questions of law related to declaratory judgment actions are reviewed de novo, but a decision regarding declaratory relief is reviewed for an abuse of discretion. *Barrow v Detroit Election Comm*, 305 Mich App 649, 662; 854 NW2d 489 (2014). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* (citation omitted).

A motion for summary disposition asserting as its basis the doctrine of standing invokes a prudential doctrine that "focuses on whether a litigant 'is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable.' " *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 620-621; 873 NW2d 783 (2015) (citations omitted). "A motion based on such a defense would be within MCR 2.116(C)(8) or MCR 2.116(C)(10), depending on the pleadings or other circumstances of the particular case." *Id.* (citation omitted). Here, defendants brought motions pursuant to MCR 2.116(C)(8), and Judge Kelly cited MCR 2.116(C)(8) in his opinion.

However, Judge Kelly's opinion was in part based upon an analysis of documentary evidence beyond the pleadings. Therefore, we treat the motions as having also been brought, and granted, pursuant to MCR 2.116(C)(10), and we too examine the pleadings and documents on which the parties and the court relied. *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000).

A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper under MCR 2.116(C)(10) where there is no "genuine issue regarding any material fact." *Id*.

MCR 2.605 governs actions seeking a declaratory judgment. "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). A judgment for declaratory relief is not precluded where there exists another adequate remedy. MCR 2.605(C). A declaratory judgment is a procedural remedy that constitutes a binding and conclusive adjudication of the rights and status of the litigants. *Associated Builders & Contractors v Dep't of Consumer & Indus Servs Dir*, 472 Mich 117, 124; 693 NW2d 374 (2005), overruled in part on other grounds in *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 371 n 18; 792 NW2d 686 (2010). MCR 2.605 incorporates traditional restrictions on justiciability, such as standing, ripeness, and mootness. *Id*. at 125.

In *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 713; 848 NW2d 482 (2014), this Court explained:

> Pursuant to MCL 600.3240, after a sheriff's sale is completed, a mortgagor may redeem the property by paying the requisite amount within the prescribed time limit. . . . "Unless the premises described in such deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter . . . ." MCL 600.3236. If a mortgagor fails to avail him or herself of the right of redemption, all the mortgagor's rights in and to the property are extinguished. [Citation omitted.]

In *Bryan*, the plaintiff sued the defendant bank, which was both the lender of the loan that secured the mortgage and the purchaser of the property following the sheriff's sale, to quiet title and for unjust enrichment, deceptive or unfair practices, and wrongful foreclosure, alleging that the defendant was not the owner of the indebtedness secured by the mortgage or the servicing agent as required by Michigan law because the defendant failed to record its interest in the property before the sheriff's sale. *Id*. at 710-711. The plaintiff argued that the sheriff's sale was void ab initio. *Id*. at 711. The plaintiff filed her complaint after the expiration of the redemption

period, but the plaintiff argued that she had standing to sue because of fraud or irregularity in the foreclosure process due to the defendant's failure to record its mortgage interest before the sale. *Id.* The *Bryan* Court held that summary disposition for the defendant was proper because the plaintiff lacked standing to bring her claims. *Id.* at 715. Moreover, the plaintiff failed to demonstrate how any irregularity in the recording of the mortgage prejudiced her position to preserve an interest in the property. *Id.* at 717-718.

As Judge Kelly found, this case is analogous to *Bryan*. There is no genuine issue of material fact that plaintiff did not redeem the property within the statutory redemption period and the redemption period expired before she filed this declaratory judgment action. Thus, pursuant to *Bryan*, plaintiff never had standing to bring her claims. Once the redemption period ended, the sheriff's deed vested in Quicken, and Quicken was assigned all the "right and title" of plaintiff that existed at the time she executed the mortgage. *Hanson v Huetter*, 339 Mich 130, 133-134; 62 NW2d 663 (1954); see also MCL 600.3236. Fannie Mae later acquired that right and title by quitclaim deed. Because plaintiff lacked standing to raise any questions about the property in the declaratory judgment action (i.e., the relationship between defendants, the identity of the noteholder, and whether she was entitled to a financial remedy from defendants), summary disposition of plaintiff's claim was proper pursuant to MCR 2.116(C)(10).[1]

Plaintiff makes numerous unpreserved claims on appeal, including allegations that: (1) she did not sign the note, "Agent Nancy" signed it, (2) the default notice mailed to her was unsigned, and (3) default was not proven beyond a reasonable doubt at a trial by jury. "This Court will generally decline to address unpreserved issues unless a miscarriage of justice will result from a failure to pass on them, . . . the question is one of law and all the facts necessary for its resolution have been presented, or [it is] necessary for a proper determination of the case." *Autodie, LLC v City of Grand Rapids*, 305 Mich App 423, 431; 852 NW2d 650 (2014) (quotation marks and citation omitted). No miscarriage of justice will result from the failure to address plaintiff's claims because, again, there is no genuine issue of material fact that plaintiff lacked standing to bring them after the expiration of the redemption period.

Plaintiff also raises the additional unpreserved claim that the transfer between Quicken and Fannie Mae for one dollar was constructive fraud and argues that fraud constitutes grounds for relief from judgment under MCR 2.612(C)(1). Indeed, after the redemption period, a court may equitably extend a mortgagor's ability to file suit asserting rights or interest in the property

---

[1] On appeal, defendants focus on the alternative basis for Judge Kelly's dismissal that plaintiff failed to satisfy the pleading requirements under the court rules. Given the lack of supporting facts required by MCR 2.111(B)(1) and plaintiff's failure to amend her complaint, Judge Kelly did not err by concluding that summary disposition was also warranted on this basis under MCR 2.116(C)(8). Although defendants assert that summary disposition may also be affirmed on the alternative grounds of collateral estoppel and res judicata, their arguments are unpreserved and we decline to review them. *Ligon v Detroit*, 276 Mich App 120, 129; 739 NW2d 900 (2007) (noting that an appellate court may decline to review an issue that was not raised in or decided by the trial court).

only upon a strong showing of fraud or irregularity. *Sweet Air Investment, Inc v Kenney*, 275 Mich App 492, 497; 739 NW2d 656 (2007); *Schulthies v Barron*, 16 Mich App 246, 247-248; 167 NW2d 784 (1969). "[D]efects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*." *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 115; 825 NW2d 329 (2012). Thus, parties seeking to set aside a foreclosure sale must show not only fraud or irregularity in the foreclosure process, they also "must show that they were prejudiced" by the alleged fraud or irregularity. *Id*. "To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent" the fraud or irregularity. *Id*. at 115-116.

The allegedly fraudulent transfer plaintiff cites occurred well after the sheriff's sale and after expiration of the redemption period. Constructive fraud requires a misrepresentation to induce detrimental reliance, *Gen Electric Credit Corp v Wolverine Ins Co*, 420 Mich 176, 188-190; 362 NW2d 595 (1984), but plaintiff does not allege that defendants made a representation of any kind to her regarding this deed transfer. She also makes no argument establishing that she would have been in a better position to preserve her interest absent this transfer or the alleged fraud. Therefore, even if plaintiff had properly preserved her claim, she has failed to demonstrate the requisite prejudice to set aside the foreclosure sale.

Plaintiff also argues on appeal that Judge Kelly lacked authority to discharge the lien because only the declaratory judgment action was before him and nobody raised the issue of the claim of lien. Again, we disagree. MCR 2.605(F) provides that "[f]urther necessary or proper relief based on a declaratory judgment may be granted, after reasonable notice and hearing, against a party whose rights have been determined by the declaratory judgment." *Shuler v Mich Physicians Mut Liability Co*, 260 Mich App 492, 520; 679 NW2d 106 (2004). "[T]he language of MCR 2.605 is permissive rather than mandatory; thus, it rests with the sound discretion of the court whether to grant declaratory relief." *PT Today, Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 141; 715 NW2d 398 (2006). "Actions for declaratory relief are intended to minimize avoidable losses and the unnecessary accrual of damages." *Durant v Michigan*, 456 Mich 175, 208-209; 566 NW2d 272 (1997).

Once the trial court ruled that plaintiff lacked any standing related to the property, it had discretion under MCR 2.605(F) to grant further necessary relief to minimize further losses or damages. Specifically, because plaintiff's rights in the property were extinguished, she was not entitled to reimbursement for investments in the property. Discharge of the claim of lien related to those investments therefore avoided further damages to defendants by the cloud on the title to the property. Plaintiff had notice of the discharge of the claim of lien, and a chance to object to the discharge in a written pleading and at a hearing. Thus, Judge Kelly did not abuse his discretion by discharging the claim of lien pursuant to MCR 2.605(F).

III. DOCKET NO. 329752

In Docket No. 329752, plaintiff again asserts that Judge Kelly erred by discharging the claim of lien and, therefore, the discharge was not a proper basis for Judge West's dismissal of the foreclosure of the claim of lien action. As we concluded earlier, Judge Kelly did not abuse his discretion by discharging the claim of lien. In the foreclosure action, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). Judge West decided

this case under MCR 2.116(C)(10) looking beyond the pleadings, specifically at Judge Kelly's order discharging the claim of lien. *Kefgen*, 241 Mich App at 616. As a result of the discharge, there was no genuine issue of material fact remaining regarding the claim of lien and defendants were entitled to judgment as a matter of law. Judge West did not err by granting defendants' motion for summary disposition.[2]

Plaintiff claims that summary disposition violated her constitutional rights to a jury trial, Const 1963, art 1, § 14, prohibitions against involuntary servitude, US Const, Am XIII, and Const 1963, art 1, § 9. But "[s]ummary disposition does not violate a party's right to a jury trial because that right extends only to cases in which there are genuine issues of fact for the jury. *Lowrey v LMPS & LMPJ, Inc*, 313 Mich App 500, 507; 885 NW2d 638 (2015). Moreover, pursuant to the mortgage, plaintiff had an obligation to maintain the property to prevent deterioration. To the extent that plaintiff claims that she performed services, such as the removal of trees, painting, and lawn care, plaintiff had alternatives to personally performing these services, such as hiring contractors. Thus, even if the alternatives were distasteful or less attractive than the services, she cannot establish involuntary servitude. *Blair v Checker Cab Co*, 219 Mich App 667, 673; 558 NW2d 439 (1996). Because plaintiff cannot establish plain error with regard to these constitutional claims, reversal is not required.

Plaintiff also objects to Judge Kelly's refusal to recognize her as "Agent Nancy" at the June 29, 2015 hearing in the declaratory judgment action. The following exchange occurred at that hearing:

> *Plaintiff.* For the record, Agent Nancy respectfully objects to the following:
>
> *Trial court.* I don't recognize you as an agent of yourself. I recognize you as a person that has come before this Court and has submitted to the Court's jurisdiction. You may proceed in that fashion.
>
> *Plaintiff.* Okay. Agent Nancy objects to - -
>
> *Trial court.* Again, you're not an Agent.
>
> *Plaintiff.* Nancy.
>
> *Trial court.* You're Mrs. Gardner.

Plaintiff claims that Judge Kelly violated her right to the freedom of speech, US Const, Am I, and Const 1963, art 1, § 5, and her religious beliefs, Const 1963, art 1, § 4. She explains that

---

[2] In addition, plaintiff's lack of standing was a valid alternative basis for dismissing the foreclosure action under MCR 2.116(C)(10). Defendants again assert that summary disposition was appropriate on the grounds of collateral estoppel and res judicata, but their arguments are unpreserved and we decline to review them. *Ligon*, 276 Mich App at 129.

-8-

Agent Nancy is an agent of the Almighty God acting on behalf of "property you refer to as Nancy J. Gardner."

An "agent" is " 'a person having express or implied authority to represent or act on behalf of another person, who is called his principal.' " *Stephenson v Golden*, 279 Mich 710, 734; 276 NW 849 (1937), quoting Bowstead, Agency (4th ed), p 1. According to this definition, plaintiff could not serve as an agent for herself, only "another person." And even if plaintiff could serve as an agent for herself, she could not appear in court in that capacity unless she was a licensed attorney. See MCL 600.916 (unauthorized practice of law); *Cobb v Judge of Superior Court of Grand Rapids*, 43 Mich 289; 5 NW 309 (1880) (a party to an action in a court of record cannot appear therein by an "agent" not licensed as an attorney). Therefore, Judge Kelly did not err by instructing plaintiff to refer to herself as "Mrs. Gardner" instead of Agent Nancy. Moreover, even if plaintiff could establish a violation of her constitutional rights from this instruction, she cannot establish that the violation was prejudicial. She does not argue that she was denied the opportunity to make any arguments. Rather, following this interchange, plaintiff reiterated the contents of her complaint and addressed defendants' arguments. Regardless of her constitutional claim, the claim of lien had already been discharged, plaintiff lacked standing to make claims against the property, and summary disposition was proper.

IV. DOCKET NO. 330964

In Docket No. 330964, plaintiffs argue that Judge Kelly erred by dismissing their quitclaim deed action because they lacked the capacity to sue as "Agent Nancy" and "Agent Don." In his order, Judge Kelly did not cite a court rule as the basis for his decision. Defendants filed a motion for summary disposition under MCR 2.116(C)(7), (8), and (10), not MCR 2.116(C)(5) (capacity to sue). It would therefore appear from this context that Judge Kelly granted summary disposition pursuant to MCR 2.116(I)(1) ("If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay."). *Kefgen*, 241 Mich App at 616.

MCR 2.201(C) pertains to the capacity to sue and provides:

(C) Capacity to Sue or be Sued.

(1) A natural person may sue or be sued in his or her own name.

(2) A person conducting a business under a name subject to certification under the assumed name statute may be sued in that name in an action arising out of the conduct of that business.

(3) A partnership, partnership association, or unincorporated voluntary association having a distinguishing name may sue or be sued in its partnership or association name, in the names of any of its members designated as such, or both.

(4) A domestic or a foreign corporation may sue or be sued in its corporate name, unless a statute provides otherwise.

(5) Actions to which the state or a governmental unit (including but not limited to a public, municipal, quasi-municipal, or governmental corporation, an unincorporated board, a public body, or a political subdivision) is a party may be brought by or against the state or governmental unit in its own name, or in the name of an officer authorized to sue or be sued on its behalf. An officer of the state or governmental unit must be sued in the officer's official capacity to enforce the performance of an official duty. An officer who sues or is sued in his or her official capacity may be described as a party by official title and not by name, but the court may require the name to be added.

Likewise, MCL 600.2051(1) provides, "Any natural person may sue or be sued in his own name."[3] There is no evidence in the record that "Agent Nancy" or "Agent Don" are Nancy J. Gardner's and Donald Gardner's own names. Relying on the court rule's use of the word "may," plaintiffs argue that the capacities in MCR 2.201(C) do not amount to an exclusive list and others have the capacity to sue. The word "may" does, in fact, signify a permissive provision. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). But the word "may" permits the listed persons or entities, including a natural person in his or her own name, to be sued. Nothing in the plain language of the court rule suggests that this is a non-exclusive list. On the contrary, "[t]his Court recognizes the maxim *expressio unius est exclusio alterius*; that the express mention in a statute of one thing implies the exclusion of other similar things." *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997). Because the court rule does not include a provision for plaintiffs to sue or be sued under the circumstances they allege—persons acting as uncertified agents on behalf of themselves—they cannot establish the capacity to sue under MCR 2.201(C).[4]

Referencing the Bible and their service to God, plaintiffs also claim some capacity to sue as "personal representatives" under MCR 2.201(B), which provides, in relevant part:

(B) Real Party in Interest. An action must be prosecuted in the name of the real party in interest, subject to the following provisions:

---

[3] *Black's Law Dictionary* (9th ed) defines the term "natural person" as "[a] human being."

[4] Plaintiffs argue that an agent falls within the definition of "person" in the Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq*., and the Uniform Commercial Code (UCC), MCL 440.1101 *et seq*., but even if those definitions apply to MCR 2.201(C), "Agent Nancy" and "Agent Don" are not plaintiffs' own names. Notably, plaintiff relied on the UCC in the prior Sixth Circuit appeal and that court concluded that the UCC does not apply to mortgage foreclosures. *Gardner*, unpub opn at 365.

Plaintiffs cite the definition of "agency" in MCR 7.102(1) (" 'agency' means any governmental entity other than a 'trial court,' the decisions of which are subject to appellate review in the circuit court") and argues that "Agent Nancy" and "Agent Don" are government entities belonging to the United States of America. But again, the record does not establish that "Agent Nancy" and "Agent Don" are plaintiffs' own names under MCR 2.201(C).

-10-

(1) A personal representative, guardian, conservator, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a person authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought.

But again, there is no evidence in the record that "Agent Nancy" or "Agent Don" were legally appointed as a personal representative, or to act in some other representative capacity, for Nancy J. Gardner and Donald Gardner. See, e.g., MCL 700.1403, MCL 700.3307, and MCL 700.3614. Accordingly, plaintiffs have not demonstrated that they had the capacity to sue in a representative capacity. See *Warren v Howlett*, 148 Mich App 417; 383 NW2d 636 (1986) (the plaintiff lacked the capacity to sue on behalf of the decedent's estate because he was not appointed as personal representative until nine days after filing suit).

Plaintiffs claim that they could sue as "Agent Nancy" and "Agent Don" because "Agent Nancy" signed the mortgage and note. Plaintiffs' claim is inconsistent with the record. The copies of the mortgage and note in the lower court records were signed by "Nancy J. Gardner." Therefore, neither "Agent Nancy" nor "Agent Don" have any interest in the controversy by virtue of those documents.

Plaintiffs claim that Judge Kelly erred by reasoning that only attorneys could represent parties. But MCL 600.916 prohibits the unauthorized practice of law. By holding themselves out as agents representing Nancy J. Gardner and Donald Gardner and filing legal documents as such, rather than parties appearing *in propria persona*, plaintiffs effectively represented themselves as attorneys without license and authority.

In their reply brief on appeal, plaintiffs object to Fannie Mae's attorney's involvement as a third-party intervener. Plaintiffs' argument is inconsistent with the record on appeal. Nicholas Tatro filed an appearance as an attorney for Fannie Mae consistent with MCR 7.204(G).

In sum, Judge Kelly properly dismissed plaintiffs' action for lack of capacity to sue under MCR 2.116(I)(1). In addition, just as in Docket Nos. 328185 and 329752, plaintiffs' lack of standing was a valid alternative basis for dismissing the action under MCR 2.116(C)(10).

## V. SANCTIONS

In all three cases, defendants argue that this Court should impose sanctions for a vexatious appeal. Defendants' requests are not properly before this Court, because they were not made in a motion filed under MCR 7.211(C)(8). See MCR 7.216(C)(1); *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 181; 761 NW2d 784 (2008). Pursuant to MCR 7.211(C)(8), defendants may file a motion requesting damages or other disciplinary action "at any time within 21 days after the date of the order or opinion that disposes of the matter that is asserted to have been vexatious." Therefore, defendants' request is denied without prejudice.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause

-11-